C. L. Seibel, Appellant, v. Commonwealth Life Insurance Company, Appellee.

CONTRACTS: Legality of Object—Waiving Vested Right. A party
1  may, by contract, waive a vested right. So held as to a contract providing for the waiver of commissions already earned by an insurance agent, if the agent entered the employ of another company.

CONTRACTS: Construction—Evidence to Aid Construction. A party
2  may not testify to his construction of an unambiguous contract.

*Appeal from Clarke District Court.*—H. K. Evans, Judge.

October 17, 1922.

Action at law, to recover commissions due the plaintiff, as the former agent of the defendant under an agency contract.

The answer was, in substance, a general denial, and an averment that the plaintiff abandoned the contract and thereby, under the terms of such contract, surrendered his right to claim further alleged commissions. At the close of the evidence, the trial court directed a verdict for the defendant, and the plaintiff appeals.—*Affirmed.*

*D. W. Higbee, O. M. Slaymaker,* and *A. M. Miller,* for appellant.

*Temple & Temple* and *McGinnis & McGinnis,* for appellee.

EVANS, J.—The action is brought upon a written contract, purported to have been entered into between plaintiff and defendant on September 10, 1918. It constitutes the plaintiff a general agent for the defendant in certain territory, comprising 56 counties of the state of Iowa and two or three counties of the state of Missouri. At the time of such signing of the contract, and for one or two years prior thereto, the plaintiff was and had been the agent of the defendant, under successive contracts. The contract of September 10th purported to supersede all previous contracts. It was entered into at the request of the plaintiff, and was deemed by him to be more favorable to himself than the then existing contract. The compensation promised to the plaintiff under this contract consisted of a certain percentage of the first premium paid on all policies written by the plaintiff or his subagents. It was also agreed therein that he should receive 7 per cent upon all subsequent renewals of such policies for the period of 19 years, subject to the proviso that he should not enter the employ of any other life insurance company prior to April 1, 1922. On November 1, 1918, the plaintiff voluntarily quit the services of the defendant company, and entered the employment of another life insurance company. His reasons for so quitting were set forth in the following letter:

"November 1st, 1918.

"Commonwealth Life Ins. Co.,

"Omaha, Neb.

"Gentlemen: I desire to tender my resignation as state agent

for the Commonwealth Life Insurance Company for the state of Iowa, to take effect on this date.

"My reasons for doing this are on account of your conduct. I find that you have and are using in the state of Missouri, a disability policy which has been disapproved by the insurance superintendent of such state, and you are threatening to write policies in the state of Iowa which are disapproved by the insurance commissioner of such state and for other reasons not herein mentioned.

"Your conduct has been and threatened to be such that I feel I cannot longer remain in your employment, and is such that I feel I am justified in this action.

"I feel further that I am entitled to the renewals under my contract for the full nineteen years, and shall insist on having them.

"Very respectfully,

"C. L. Seibel."

The contract under consideration contains 26 paragraphs. The points of contest, however, are limited to the following parts of such contract:

"Third.   The said agent agrees to devote his entire time, talents and energies to the services of the company and to act exclusively for it; to obey and observe its rules, regulations and instructions; to employ such subagents as shall be necessary to produce the volume of business hereinafter provided for, and in consideration of said agreement by the said agent, the company agrees to allow him the following compensation, unless otherwise stipulated in writing, viz., a commission upon the premium which shall be paid through and received by the company upon all policies of insurance effected with the company by or through the procurement of the said agent, which commission shall be as follows:

"Table of Rates of Commissions on the First Year's<br>Premium.

Ordinary Life, all forms ............................75%
20-Payment Life, all forms ..........................75%
20-Payment Life, endowment option ..................75%

15-Payment Life ................................... 50%
10-Payment Life ................................... 45%
20-Payment Endowment .......................... 50%
15-Payment Endowment .......................... 30%
10-Payment Endowment .......................... 30%

"Fourth. It is further agreed that said general agent shall receive an annual renewal of seven per cent (7%) on each succeeding premium paid to the company in cash on all premiums other than semiendowment and term insurance, for a period of nineteen years after the first annual premium. But in the event said general agent shall cease to be in the employ of said company prior to April 1, 1922, and shall enter the employ of another life insurance company, all renewals hereunder shall immediately cease and determine immediately upon such employment, and said company shall not be liable for any further renewals hereunder. However, after April 1, 1922, should said general agent enter the employ of another life insurance company, then and in that event, said company shall pay to said general agent a renewal commission of five per cent (5%) on such succeeding annual premiums so paid to the company instead of seven per cent (7%) as hereinbefore provided. * * *

"Twenty-sixth. It is hereby agreed that this contract takes effect as of September 10, 1918, and shall remain in force for the period of one year unless sooner terminated in the manner hereinbefore set forth and in the event this contract is fully complied with and strictly performed by said party of the second part, it shall automatically extend from year to year; and, it supersedes any and all previous contracts and agreements between the parties hereto which are hereby canceled and annulled, except as to that part or parts of previous contracts which pertain to renewal commissions, it being understood and agreed that said renewal commissions on former contracts are to be governed by the terms and conditions of this contract."

The petition, in form, presents an action on the contract. It is not an action for damages. In view, however, of certain provisions of the contract which we have above set forth, the

1. CONTRACTS:
legality of
object: waiving
vested right.

petition pleads that such provisions were void and of no effect. The reasons set forth as a basis of such pleading are:

(1) That the plaintiff had earned his right to the renewal commissions, and had a vested right therein, and that it was contrary to public policy to recognize the validity of any contract or provision which would forfeit the same.

(2) That the defendant entered into the contract in bad faith, and with intent not to perform the same. That the defendant was conducting its business in a method and manner contrary to the laws of Iowa and of the state of Missouri and that it was doing so against the protest of the plaintiff, whereby the plaintiff was justified in terminating his employment, in order to protect himself against larger losses.

We discover nothing in the contract that renders it inherently void or contrary to public policy; nor does the plaintiff cite any authority which tends to support his proposition in that regard. Nor do we find in the record any evidence tending to prove any conduct on the part of the defendant at any time subsequent to September 10, 1918, which was in any degree violative of the laws of either Iowa or Missouri, or of the regulations of the insurance departments. It does appear that, in 1916, one Pringey, who was a resident of Missouri, and who was unlicensed in Iowa, wrote certain policies of insurance for the defendant in Iowa, and that such business was, therefore, acquired in violation of law. Quite a volume of correspondence on that subject between the insurance department of Iowa and the defendant company is incorporated in the record. That correspondence began in December, 1916, and ended three or four months later. The defendant appears to have been censured by the department, and to have made whatever amends were required. Its authority to do business either in Iowa or Missouri was never revoked, nor was the controversy alive on or after September 10, 1918. It is made to appear, also, that, sometime in 1917, the insurance department in Missouri took exception to a certain disability clause contained in the policy form, and required that an extra charge should be made therefor. The last item of correspondence on that subject consisted of a letter from the defendant to the insurance department of Missouri,

inclosing an amendment to its form of policy, which, so far as appears in this record, ended the incident.

The plaintiff put in evidence certain conversations which he had with the agency manager, Smith, in October, 1918, on the subject of these past transactions. We see no materiality whatever in the evidence of such conversations. Much stress is laid by plaintiff upon an alleged conversation with Smith about October 20, 1918, as follows:

"And in the conversation, I says: 'Clyde, if I keep on producing business at the rate I am producing it, making the same gains I have been making, before the time my renewals become nonforfeitable, they will amount to as much as the president of the company.' He says, 'Oh, hell, don't you know they will get rid of you before that time? They will never let that stand.' We talked that all over. That is the reason that Mr. O'Hanlon objected to the contract becoming nonforfeitable in 1921."

Giving full credence to this testimony, and assuming that Smith had authority to discharge agents, was this sufficient evidence to sustain a finding that the company had either breached the contract or was intending to do so? We think not. Smith, as agency manager, was no more competent to testify to the intent of other persons than if he were not an agency manager. The evidence carries on its face a certain self-contradiction which becomes quite prominent, in the light of other circumstances appearing in the record. According to plaintiff's admission, as a witness, he had already promised, as early as September 1st, to enter the employ of the Equitable Life Insurance Company of New York. His license as such agent was immediately applied for, and was actually issued on October 8th. He was about to enter the employ of this company under such license. It was to his apparent interest to find some excuse of blame or breach on the part of the defendant. On October 23d, he wrote a letter to the insurance department of Missouri, for which no motive is apparent other than here indicated. In his letter of resignation on November 1st, he emphasized specific reasons for his resignation, and made no mention of the conversations now relied on.

Upon the whole record, therefore, we are clear that, if a

verdict had been rendered finding that the defendant company had breached or renounced the contract, such finding could not be sustained.

The case resolves itself, therefore, into a simple action on a written contract. The decisive question is: Has the plaintiff brought himself within those terms and conditions of the contract which entitled him to the renewals claimed? The contract must be construed according to all its terms. We find no invalidity in it. The authorities are apparently uniform in sustaining the validity of contracts substantially identical with the one before us. *Chase v. New York Life Ins. Co.*, 188 Mass. 271 (74 N. E. 325); *Chicago Life Ins. Co. v. Tiernan*, 263 Fed. 325; *Jacobson v. Connecticut Mut. Life Ins. Co.*, 61 Minn. 330 (63 N. W. 740). Plaintiff cites no authority holding otherwise.

Some claim is made by the plaintiff that the jury should have been permitted to construe the contract. He also offered to prove by the witness Crook his own construction of the contract, to the effect "that the renewals were pay for getting the business, and not pay for collecting the subsequent premium." The court rejected the evidence, and error is assigned upon the ruling. The ruling was clearly proper. It was the duty of the court to construe the contract. If it were ambiguous, and if its proper interpretation had required a knowledge of facts not disclosed in the writing itself, evidence of such facts, and perhaps of custom, would have been admissible in aid of interpretation. The terms of the contract herein are clear and unambiguous, and were binding upon the court. They opened no door to the admission of oral evidence.

2. CONTRACTS: construction: evidence to aid construction.

Our conclusion is that the trial court properly directed the verdict for the defendant, and its judgment is affirmed.— *Affirmed.*

STEVENS, C. J., ARTHUR and FAVILLE, JJ., concur.