**MARION T. FANNALY, Inc., v. ILLINOIS CENT. R. CO.**

No. 1439.

Court of Appeal of Louisiana. First Circuit.

March 25, 1935.

Carroll Buck, of Amite, for appellant.

Jos. M. Blache, Jr., and Reid & Reid, all of Hammond, for appellee.

LE BLANC, Judge.

This suit is brought by Marion T. Fannaly, Inc., although it is admitted and agreed that the shipment which gave rise to this claim for damages against the railroad company, defendant herein, was made in the individual name of Marion T. Fannaly, and that he was acting for and on its behalf.

Plaintiff is a large dealer in strawberries, doing business at Hammond, La. On May 16, 1930, it shipped a carload of berries over the defendant railroad company's line from Hammond to Milwaukee, Wis. The shipment was consigned to M. T. Fannaly, care of Wisconsin Cold Storage Company. It consisted of 1,480 cases described in the bill of lading as "strawberry preserves—Preserved in own juice in cans." The bill of lading also called for "standard refrigeration, 10% salt." The connecting line of the initial carrier was the Chicago & Northwestern Railway Company at Chicago, Ill.

The shipment moved from Hammond on May 16, 1930, reached Chicago May 19th, was transferred to the connecting carrier the same day, and reached Milwaukee at 3:45 a. m. on May 20th. The car was not un-

loaded until May 23, 1930 at 9 o'clock in the morning. On unloading, it was claimed that a part of the shipment had spoiled, due to lack of proper refrigeration on the part of the railroad company, so it is alleged in plaintiff's petition. The whole shipment was immediately placed in cold storage, however, and about three weeks after the berries were shipped back to Chicago, where they were sold at a loss due, for the greater part to rehandling, and said to amount to $1,867.44, which is the sum plaintiff is now seeking to recover from the defendant, Illinois Central Railroad Company.

It is admitted that the damage, if any, was not occasioned by any fault or failure of duty on the part of the Illinois Central Railroad Company. It was sued, however, as the initial carrier, and judgment was rendered against it in the lower court for the full amount demanded by the plaintiff.

One of the defenses is that, according to the bill of lading, the shipment was one of preserves, which is not a perishable, and that plaintiff could not go beyond the terms of the bill of lading and prove anything about failure to have kept the car properly refrigerated, because preserves require no refrigeration. The other defense is that neither defendant nor the connecting carrier was lacking in any duty in transporting the shipment over their respective lines; that it was handled in a careful and prudent manner and delivered with due diligence and in accordance with the contract covering the same. Defendant contends that the car was placed on the tracks which served the Wisconsin Cold Storage Company on May 23, 1930, in whose care it was consigned, upon its own orders, and that, at the time of delivery, the inside temperature of the car was 32 degrees. The contention is that, although the car reached Milwaukee on May 20, 1930, and the Wisconsin Cold Storage Company was notified of its arrival on May 21st, under an agreement between that company and the connecting railroad carrier as to when cars should be placed on the track to be unloaded, it was not until May 23d that orders were given to so place it, and that, if there was any delay, it was on the part of the Wisconsin Cold Storage Company, which had been given proper notice of the arrival of the car by the connecting railroad carrier.

Counsel for defendant strenuously contends, in discussing the first defense mentioned, that the district judge was in error in admitting parol testimony, over his objection, to show the nature of the shipment, in view of its full and complete description in the bill of lading. Whilst it is true that the shipment is described as "strawberry preserves," it is observed that the word "preserves" is qualified by the phrase which follows, "preserved in own juice in cans." We believe that the qualifying phrase indicates that the shipment was something different from ordinary preserves, which, as we understand that term, is used to describe a fruit, a berry, or vegetable that has been cooked with sugar. Besides, the bill of lading called for "standard refrigeration, 10% salt," which in itself was sufficient to show that the shipment was not one of ordinary preserves. We certainly believe that the bill of lading was open to explanation, and the ruling of the trial judge which permitted parol testimony to show the true nature and character of the shipment and whether it was perishable or not was correct.

In considering the second and main contention of the defendant, it is necessary, we think, to refer to those allegations of the plaintiff's petition on which its cause of action is based. These are found in articles 6 and 7, which are to the effect that the negligence of the initial and connecting carriers consisted in the failure of the one or the other to have given proper care and attention to the shipment "and unduly delayed transportation and delivery of same." In article 7 especially it is specifically stated that the car was not properly iced and re-iced and that the railroad carriers failed to expeditiously transport and deliver the same; that the car was given to the Illinois Central Railroad Company on May 16, 1930, "and should have reached its destination not later than May 21, 1930, whereas it was delayed in transit until May 23, 1930."

As we have already stated, it is conceded that the Illinois Central Railroad Company, the initial carrier, was not negligent in the handling of the car, and it follows therefore that, if there was any delay as alleged in the petition, it was after the shipment had been taken over by the connecting carrier, the Chicago & Northwestern Railway Company.

The proof submitted by the connecting carrier, and it is not contradicted, is that it received the car from the Illinois Central during the night of May 19, 1930, and delivered it in Milwaukee at 3:45 on the morning of May 20, 1930, and on that same day placed it on the service track of the Wisconsin Cold Storage Company, in whose care it had been consigned by the plaintiff. It becomes apparent then that the delay, if any,

was not in transit, as the car reached Milwaukee one full day ahead of the plaintiff's own estimate of the time involved, and could only have occurred in delivering the car to the consignee.

■■ To hold a railroad company liable as a common carrier in this state for failure to make prompt delivery of the shipment after its arrival at destination, it must appear that there was negligence in giving the consignee notice of its arrival and allowing a reasonable time thereafter for removal of the goods, in the absence of any valid stipulation in the bill of lading or agreement between the parties. In the absence of such stipulation or agreement, if prompt notice was given and a reasonable time granted, the liability of the railroad company as a carrier ceases, and its responsibility is only that of a warehouseman. Wood v. Louisiana & A. Ry. Co., 158 La. 504, 104 So. 306.

■ The testimony of William J. Sullivan, agent for the Chicago & Northwestern Railway Company at Milwaukee, is to the effect that the car of "cold pack fresh frozen strawberries," as he refers to the shipment, arrived in Milwaukee on train No. 291 at 3:45 a. m. on May 20, 1930, and that on the same morning it was placed on the track which served the Wisconsin Cold Storage Company, about 300 feet from their platform, "pending further orders from the Cold Storage Company." He says that the Wisconsin Cold Storage Company had knowledge of the arrival of the car on the morning of May 21, 1930. Their unloading platform holds only two cars, and on the morning of May 20th, when this car was placed on the service track, there were five cars awaiting unloading by the cold storage company. He says that their cars are not placed at the unloading platform immediately on arrival, but only on the specific instruction of the cold storage company, and that this car was so placed as soon as instructions had been received.

We understand from his testimony that the cars ahead of this at the platform were loaded with fresh frozen fish, and it may be that the cold storage company was more anxious to unload the fish than this shipment of cold pack berries.

Mr. William Heath, freight inspector for the Western Weighing and Inspection Bureau, assigned to the Chicago & Northwestern Freight Station in Milwaukee, testifies that his duties are to examine all weight bills that pass through the station to see that the shipments are properly described in the bills of lading and that proper rates are applied. In going over the weight bills on the morning of May 21, 1930, he noticed that the bill covering the shipment of these berries carried the wrong rate, as it was billed under the rate for ordinary canned goods, whereas they were fresh berries. He suspected as much because the car was under refrigeration. For that reason, he says, he went to the cold storage company to make an inspection, but the car was not on the unloading platform. He went to see Mr. Knueppel, foreman of the company's unloading platform, and told him the purpose of his visit. That afternoon he telephoned the cold storage company, speaking to the same young lady in the office he had seen in the morning, to inquire if the car had been placed at the platform, and it had not. On the following day, which was May 22d, he went again to the cold storage company and told Mr. Knueppel that the shipment was highly perishable and should be unloaded at once and placed in their plant under refrigeration. Mr. Knueppel told him then that the order to have the car placed should come from the superintendent. He tried to communicate with the superintendent, but was unable to do so. From the testimony of Mr. Sullivan and other witnesses, we learn, as already stated, that the car was placed at the platform and unloaded on the following morning.

The testimony of these two witnesses is not contradicted. Mr. Otto L. Keuhn's testimony was taken by deposition, as was that of Mr. Sullivan and Mr. Heath. He is president of the Wisconsin Cold Storage Company. He testified mostly from records. He says that the car was received by them on their sidetracks, meaning at their platform as we understand it, on May 23, 1930, at 9:30 a. m., but he does not deny that his company had had previous notice of the arrival of the car on the service track, as testified to by the other two witnesses Sullivan and Heath.

The proof satisfies us that the consignee in this case had ample notice by the delivery carrier of the arrival of this car of berries and that it was made aware of the nature of the shipment. The proof also satisfies us that, under their system of handling cars at their unloading platform, the storage company gave instructions as to which were to be placed there at a given time, and that, if instructions had been given in this instance, there is no reason why they would not have been followed, especially in view of Mr. Heath's anxiety and his efforts to have it unloaded because of the perishable character of the shipment.

No negligence has been shown on the part of either carrier in handling the shipment while in transit and none on the part of the connecting carrier in delivering it, and consequently there is no liability arising under the terms of the bill of lading. The question of liability on the part of the Chicago & Northwestern Railway Company as warehouseman cannot be considered in this suit, which is one directed against the initial carrier on the original bill of lading issued by it.

Defendant filed a reconventional demand, claiming the sum of $314.82 as being the difference in the rate which the shipment carried and that which should have been applied. Granting the claim to be a proper one, it is not supported by sufficient proof, in our opinion, and will not be allowed.

For the reasons stated, it is ordered that the judgment appealed from be, and the same is hereby, set aside, annulled, and reversed, and it is now ordered that there be judgment in favor of the defendant, Illinois Central Railroad Company, and against the plaintiff, Marion T. Fannaly, Inc., rejecting the said plaintiff's demand and dismissing its suit at its costs. It is further ordered that the defendant's claim in reconvention be rejected at its costs.