Leal Barr, Appellant, v. Sun Life Assurance Company
of Canada, a Corporation, Appellee.

200 So. 240
En Banc
Opinion Filed February 4, 1941

*G. P. Garrett,* for Appellant;

*Osborne, Copp & Markham* and *H. P. Osborne,* for
Appellee.

BUFORD, J.—Leal Barr on the 6th day of April, 1933, entered into a contract with Sun Life Assurance Company of Canada to represent that company as its agent for the writing of insurance contracts.

Section 5 of the contract set up a schedule of commissions to be paid to the agent on premiums for the first policy year and on renewal premiums paid on the second policy year and on renewal premiums for the third to tenth policy years, inclusive, and *inter alia*, provided: "No commission in any case shall be paid on any premium beyond that of the tenth policy year."

Section 7 of the contract provided: "7. The agent shall act exclusively for the Company so far as to tender to it first all risks obtained by him or subject to his control, and agrees to be governed strictly by all rules, regulations and instructions contained in the 'Instructions to Agents,' a copy of which is on file at the Company's Branch Offices, or such as he may receive from time to time from the company."

The contract of agency terminated on May 25th, 1936.

On May 25th, 1936, the parties entered into a new contract. Section 6 of that contract set up a schedule of commissions to be paid to the agent and, *inter alia*, provided:

"6. The Company agrees to pay, and the Agent agrees to accept, as full compensation for his services of every kind, commissions upon such premiums as shall be collected and paid by the Agent to the Company in cash during the continuance of this Agreement only, on policies issued on applications received from him during the continuance of this Agreement, which commissions shall be determined according to the following schedule of commissions:"

Paragraph (q) of Section 6 provides:

"The rate of commission on renewal premiums on Participating Jubilee Policies shall be the same as provided on Endowment Policies with premiums payable for twenty

years. Renewal commission on Non-Participating Jubilee Policies shall be at the rate of five per cent (5%) of the second year's premium and two and one-half per cent (2%) on the premiums of the third to tenth policy years inclusive respectively."

Paragraph (r) of Section 6 provides:

"The rate of commission on any renewal premium of a Ten Year Renewable policy shall be the same as that provided on the corresponding premium on a Whole Life policy. No commission, however, shall be allowed on any premium beyond that of the tenth policy year of the original policy."

Section 7 of the Contract provides:

"7. If this agreement be terminated for any cause other than a violation of its terms or death, after having been in force at least one full Branch business year, a commission not to exceed five per cent (5%) shall be allowed the Agent for a period equal to that during which this Agreement may have been in force, on the renewal premiums paid in cash to the Company subsequent to such termination, on policies put in force by the Agent personally under this Agreement, provided (a) that during each such Branch business year of the continuance of this Agreement the Agent shall have put in force not less than $40,000 of new assurances accepted by the Company and on which the first years premiums thereon shall have been paid to the Company in cash (exclusive of assurances on the agent's own life and of Term Assurances, except as provided in Section 16, page 3, hereof); (b) that the Agent be not indebted to the Company; (c) *that the Agent does not become connected or do business directly or indirectly with any other life assurance company.* No commission, however, shall be paid on any premiums beyond that of the tenth policy year." (Emphasis supplied.)

Section 10 of the Contract provides:

"10. Should the Agent become connected with, or do business directly or indirectly, for any other life assurance company, this Agreement, if then in force, shall at once terminate, and, whether this Agreement is in force or not, he shall forfeit and hereby specially waives any claim to commissions in virtue of this Agreement."

The latter contract was terminated on May 9, 1939, at the instance of appellant.

On August 1, 1939, the Company wrote Barr as follows:

"Where there is an existing indebtedness at the time of termination of an Agent's Agreement, we do not send out statements of account until after the indebtedness has been liquidated. Of course, all commissions that are developed in the meanwhile go toward paying off the indebtedness. In the meanwhile you might be interested to know that yours has been reduced to just under $600.00. At that rate you can see it will take quite a while to completely wipe itself out.

"You understand, of course, that in the event you make contract with another company it forfeits your renewals. It had been my recommendation that you seek a connection outside of the insurance business. Inquiries from two local managers would indicate that you are seeking a connection in the life insurance business. I certainly hope that your final decision will be to find something perhaps in the bond business or something like that. I think you would do much better at it and would unquestionably be happier with a regular income."

In August, 1939, Barr accepted employment as a life insurance salesman with the Mutual Benefit Life Insurance Company of Newark and has continued in that position. Plaintiff was at that time receiving considerable sums of

money as commissions on renewal premiums but when he made this connection the defendant invoked the provisions of paragraph (c) of Section 7 and Section 10, *supra,* stopped payment of renewal premium commissions. All of which is alleged in the amended bill of complaint and therein plaintiff alleges, *inter alia:*

"With regard to provision (c) of said paragraph 7 of said contract of May 25, 1936, relating to renewal commissions, which said provision (c) is that the Agent will receive his said commissions on renewal premiums provided '(c) that the Agent does not become connected with or do business for any other life assurance company' any time, anywhere, the plaintiff says that in August, 1939, he *did* become connected with the Mutual Benefit Life Insurance Company of Newark as a life insurance salesman and ever since has been, and still is, employed by said company as a life insurance salesman. However, plaintiff says that, by accepting such employment, he has not forfeited his commissions on renewal premiums paid after the termination on May 9, 1939, of the aforesaid agency agreement of May 25, 1936, because the said provision (c) is wholly void and of no effect because it is a provision in restraint of trade and the same is not limited as to territory. For many years the plaintiff was employed by the defendant company as a life insurance agent. All plaintiff's contacts and experience is in the field and employment of life insurance salesmanship and all the good will he has been able to build up during his business life is invested in the insurance business. Plaintiff is not capable of following, or trained in, or fitted to, follow any other business with success. Plaintiff can follow said business of life insurance salesman with success. Since the termination of said Agency contract and/or since his employment by said Mutual Benefit Life Insurance Company, plaintiff has dealt fairly with defendant Company

and had not in any way mistreated the Sun Life Assurance Company of Canada in connection with his work for the insurance Company with which he is now connected. Plaintiff has not attempted to procure any 'switching' of policies or otherwise permitted his work for the new Company to compete with the business of the Sun Life Assurance Company of Canada which he was responsible for procuring, or contacted any of his former clients for whom he wrote policies issued by defendant Company, except in the interests of *bona fide* new business, or the servicing of former Sun Life Assurance Company policies, as a matter of conscience, duty and decency."

On October 6, 1939, plaintiff filed his bill of complaint seeking an accounting and an adjudication of the amount due him under the terms of contracts, *supra,* for commissions on renewal premiums alleged to have accrued· after the acceptance of employment with Mutual Benefit Life Insurance Company of Newark.

Pursuant to motion to dismiss and order thereon, plaintiff amended his bill of complaint and on July 6, 1940, motion to dismiss was granted and appeal was perfected to this Court.

So we are asked to determine whether or not the provisions of paragraph (c) of Section 7 and Section 10 of the contract, *supra,* are valid and binding on the parties and, therefore, whether or not the plaintiff forfeited his right to receive commissions accruing on renewal premiums paid after he had become connected as salesman with Mutual Benefit Life Insurance Company of Newark. Both questions must be answered in the affirmative.

The contract was clear, definite and unambiguous. The parties ·were *sui juris* and the allegations of the bill of complaint show no over-reaching or coercion. The employee had and exercised the privilege to refrain from taking

employment with some other life insurance company and continue to receive commissions on renewal insurance premiums paid to his former employer or to forego the right to those commissions and accept employment with another life insurance company. He elected to pursue the latter course.

This must be true because the great weight of authority holds that the agent has no vested rights in commissions on renewal premiums and that his right to be paid commissions on renewal premiums must be based entirely upon the terms of the contract and even where a contract provides for commissions on renewal premiums the contract is construed to require the payment of such commissions only as long as the employee continues as the agent of the company and, unless otherwise provided in the contract, he is entitled to no commissions on renewals made after the termination of his employment as agent. See 14 R. C. L. 869, Sec. 42; Bryant v. Continental Gas Co. (Ga. App. 1938), 199 S. E. 343; Fabin v. Provident Life & Accident Ins. Co., 5 Fed. Sup. 806; Wagner, et al., v. Land, 520 Okla. 225 (1931), 4 Pac. (2) 81; Chicago Life Ins. Co. v. Tiernan, 263 Fed. 325, 332; Boone v. New York Life Ins. Co., 165 Minn. 327, 205 N. W. 452.

In the latter case a number of authorities are correlated and cited supporting this enunciation. See also McPherrin v. Sun Life Assurance Co. of Canada, 219 Iowa 159, 257 N. W. 316; Thurman v. Rodman, 206 Ky. 180, 266 S. W. 1047; Masden v. Travelers Ins. Co., 52 Fed. (2) 75; Sutherland v. Conn. Mutual Life Ins. Co., 149 N. Y. Supp. 1008; Seibel v. Commonwealth Ins. Co., 194 Iowa, 701, 190 N. W. 173, 174.

In the last cited cast the Court had under consideration a provision which read:

"But in the event said general agent shall cease to be in the employ of said company prior to April 1, 1922, and shall enter the employ of another life insurance company all renewals hereunder shall immediately cease and determine immediately upon such employment and said company shall not be liable for any further renewals hereunder." .  .

So here was a contract like the one in the instant case, limited as to time but unlimited as to territory, and the court said:

"The case resolves itself, therefore, to a simple action on a written contract. The decisive question is: Has the plaintiff brought himself within these terms and conditions of the contract which entitle him to the renewals claimed? The contract must be construed according to all of its terms. We find no invalidity in it. The authorities are apparently uniform in sustaining the validity of contracts substantially identical with the one before us." In support of this, that court cites: Chase v. N. Y. Life Ins. Co., 188 Mass. 271, 74 N. E. 326; Chicago Life Ins. Co. v. Tiernan (CCA), 263 Fed. 325; Jacobson v. Conn. Mut. Life Ins. Co., 61 Minn. 330, 63 N. W. 740.

Appellant relies, with apparent confidence, on opinion and judgment in the case of Carson v. Sun Life Assurance Co. of Canada (Ga. Circuit Court of Appeals, 1937), 192 S. E. 221. We have carefully considered that case but think that the enunciations therein contained are contrary to the great weight of authority and also contrary to the later expressions of the same court, the same judges sitting, in the case of Bryant v. Continental Gas Co., *supra*.

. It must be borne in mind that this is not an insurance contract and, therefore, much that may be said in regard to insurance contracts is not applicable in this case. This is merely a contract of employment between the insurance company and its agent. There is nothing in this contract

which precludes the employee from accepting other like employment from another employer after the termination of his contract with Sun Life Assurance Company of Canada. Therefore, it is not a contract in restraint of trade such as the contract involved in the case of Love v. Miami Laundry Co., 118 Fla. 137, 160 Sou. 132, and other cases of that sort. Nor did this contract deprive the privilege of engaging in that vocation and work for which he was trained and which he was qualified to perform. The provision of the contract simply recognized the fact that the employer was entitled to have the good will and coöperation of the employee not only as long as the employee was employed by that employer, but for the full period of ten years during which he would receive commissions on renewal premiums and that the employee should be bound not to place himself in a position where he could not be reasonably expected to render that service. It recognized the truth expressed by Jesus in His sermon on the mountain when He said: "No man can serve two Masters; for either he will hate the one and love the other; or else he will hold to the one and despise the other." Matt. 6-24.

First year premiums are larger and, therefore, more attractive than are renewal premiums and men when dealing with one another have a right to assume that every man will do that which is to his best interest, compatible with honesty, and, therefore, the employer insurance company may fairly assume that when one of its agents quits its employ and undertakes like employment with another company, that he will put forth his best efforts to procure business for his new employer and the new employer expects no less of him.

We hold the court below committed no error in granting the motion to dismiss the bill of complaint. Such order is affirmed.

So ordered.

Affirmed.

BROWN, C. J., TERRELL, THOMAS and ADAMS, J. J., concur.

WHITFIELD and CHAPMAN, J. J., not participating.