[No. 34337. *En Banc.* February 26, 1959.]

GEORGE W. EKMAN, *Respondent*, v. UNITED FILM SERVICE, INC., *Appellant.*[1]

MALLERY, J., dissents.

*Grosscup, Ambler, Stephan & Miller, John Ambler,* and *Slade Gorton,* for appellant.

*William F. Hennessey,* for respondent.

OTT, J.—United Film Service, Inc. (hereinafter referred to as United), is a Missouri corporation doing business in

[1]Reported in 335 P. (2d) 813.

the state of Washington. November 12, 1952, United entered into a written employment contract with George W. Ekman

". . . To negotiate screening agreements with theatre owners or managers and to sell contracts to advertisers for the display of all syndicated or special film campaigns offered by United according to instructions, catalogs and current rates furnished by United."

The contract further provided:

"7. This agreement may be terminated for any reason by either party upon giving written notice by Registered Mail to the other party at that party's last known address.

"If this agreement is terminated by either party, then all commission credits shown in the Salesman's Account as of such termination date shall become Reserve credits and no additional commissions of any kind will be earned by the Salesman or credited to him. No such Reserve credits shall be payable in any part to the Salesman for a period of eighteen (18) months after termination date. If during such period and without United's written consent, the Salesman accepts employment with a film advertising company competitive to United or enters into the film advertising business for himself, then he shall forfeit any rights in such Reserve commission credits. . . ."

Ekman's territory comprised principally the state of Washington. May 15, 1954, as permitted by the contract, Ekman resigned. October 22, 1954, without United's consent, he accepted employment in this state with Alexander Film Company, a competitor of United.

Ekman's reserve credits at the end of the eighteen months' period were claimed by him to be in the sum of $3,145.25. He commenced this action to recover the amount of the reserve credits alleged to be due him by virtue of the contract. United's answer denied the indebtedness and pleaded, as an affirmative defense, the bar of the covenant in the employment contract. Ekman's reply denied the allegations of the affirmative defense.

The cause was tried to the court upon agreed facts, and the court's findings were in accordance therewith. Its conclusion of law was:

"That plaintiff, GEORGE W. EKMAN, is entitled to judgment

of and against the defendant, UNITED FILM SERVICE, INC., in the sum of $891.75, together with his costs and disbursements herein incurred."

Judgment was entered for the plaintiff, and United has appealed.

The appellant assigns as error the court's conclusion of law that respondent was entitled to judgment.

The court did not indicate upon what ground it awarded judgment to the respondent. We conclude that the court determined that § 7 of the contract was invalid and unenforcible, and hence awarded judgment for the respondent against the appellant. With this conclusion we do not agree.

The stipulated facts and the court's findings based thereon establish that respondent failed to bring himself within the terms and conditions of the contract which would have entitled him to receive the reserve commissions. Respondent was paid a fixed commission when his sales were accepted. The reserve commission or additional compensation which he claims under the contract was not a fixed and certain amount. It was unaccrued, prospective, and contingent. It became fixed only as payments were made on the contracts he had procured. Reserve commissions would not be paid when contracts were canceled or when payments were not made thereunder. The contingent character of the reserve commissions is shown by the finding that, of a potential of $3,145.25, cancellations and noncollectibility of orders on which such commissions were based had reduced the amount to which the respondent was entitled to $891.75, and it was for that amount that judgment was given him.

We know of no legal prohibition which prevents competent parties from contracting as to the terms and conditions under which unaccrued, prospective, and contingent commissions shall be paid. The elements which nullify a contract as being in restraint of trade are not present here. Rather, the situation is analogous to that of insurance agents who receive fixed commissions and, in addition, commissions on renewal premiums. The cases hold, with great unanimity, that, in an agent's contract, the provision that he

relinquishes all right to his commissions on renewal premiums if he goes to work for a competitive company emanates from the right of the parties to contract with reference to renewals upon mutually agreed terms, and that no question of public policy or restraint of trade is involved. *Barr v. Sun Life Assur. Co. of Canada*, 146 Fla. 55, 200 So. 240 (1941); *Lorch v. Kentucky Home Mut. Life Ins. Co.*, 284 Ky. 828, 146 S. W. (2d) 33 (1940); *Bohrnstedt v. Travelers' Ins. Co.*, 123 Ore. 539 (on rehearing, p. 545), 262 Pac. 938 (1928); *Himes v. Masonic Mut. Life Ass'n*, 215 Ala. 183, 110 So. 133 (1926); *Seibel v. Commonwealth Life Ins. Co.*, 194 Iowa 701, 190 N. W. 173 (1922); *Sutherland v. Conn. Mut. Life Ins. Co.*, 87 Miss. 383, 149 N. Y. S. 1008 (1914)—frequently cited and quoted; *Barton v. Travelers' Ins. Co.*, 84 S. C. 209, 66 S. E. 118 (1909); *Chase v. New York Life Ins. Co.*, 188 Mass. 271, 74 N. E. 325 (1905)—likewise a much cited and quoted case.

In *Barr v. Sun Life Assur. Co. of Canada*, supra (p. 62), the court, considering a similar contract provision, said:

". . . This is merely a contract of employment between the insurance company and its agent. There is nothing in this contract which precludes the employee from accepting other like employment from another employer after the termination of his contract with Sun Life Assurance Company of Canada. Therefore, it is not a contract in restraint of trade such as the contract involved in the case of Love v. Miami Laundry Co., 118 Fla. 137, 160 Sou. 132, and other cases of that sort. Nor did this contract deprive the privilege of engaging in that vocation and work for which he was trained and which he was qualified to perform. The provision of the contract simply recognized the fact that the employer was entitled to have the good will and cooperation of the employee not only as long as the employee was employed by that employer, but for the full period of ten years during which he would receive commissions on renewal premiums and that the employee should be bound not to place himself in a position where he could not be reasonably expected to render that service. . . .

"First year premiums are larger and, therefore, more attractive than are renewal premiums and men when dealing with one another have a right to assume that every man will do that which is to his best interest, compatible with

honesty, and, therefore, the employer insurance company may fairly assume that when one of its agents quits its employ and undertakes like employment with another company, that he will put forth his best efforts to procure business for his new employer and the new employer expects no less of him."

■■ In the instant proceeding, respondent was privileged to terminate his employment with appellant and to work for any other employer; his future was in no way affected by virtue of the contract with appellant. Thus, there was no restraint of trade. The respondent merely sought to recover an amount he contended was due him. No mistake, fraud, or ambiguity is claimed. Respondent failed to establish that he had fulfilled the conditions of the contract which granted to him the reserve commissions.

The judgment is reversed and the cause remanded with instructions to enter a judgment of dismissal.

WEAVER, C. J., HILL, DONWORTH, FINLEY, FOSTER, and HUNTER, JJ., concur.

ROSELLINI, J., did not participate.

MALLERY, J. (dissenting)—I dissent. Respondent brought this action to recover commissions earned as a salesman for the appellant. The written contract of employment prescribed his duties as follows:

"(b) *To negotiate screening agreements* with theatre owners or managers and *to sell contracts to advertisers* for the display of all syndicated or special film campaigns offered by United according to instructions, catalogs and current rates furnished by United." (Italics mine.)

The appellant admitted owing the amount for which judgment was given, but asserted, as an affirmative defense, that respondent had forfeited the commissions in question as liquidated damages under the terms of an ancillary clause to the contract, which reads:

". . . If, during such period [eighteen months after the effective date of his resignation] and without United's written consent, the Salesman *accepts employment* with a film advertising company competitive to United or enters

into the film advertising business for himself, then he shall forfeit any rights in such Reserve commission credits. . . ." (Italics mine.)

This case was tried upon stipulated facts. Nothing more definite regarding the kind of work respondent performed for a competitor appears in the pleadings, the stipulation, or the findings of fact, than the following finding of fact:

"XI. On or before October 22, 1954, plaintiff, GEORGE W. EKMAN, *accepted employment* in the State of Washington with the Alexander Film Company, a film advertising company competitive with defendant, without defendant's consent." (Italics mine.)

The contract is clearly in restraint of trade and is too broad in scope to come within the purview of certain partial restraints of trade now sanctioned in the law.

The test of validity of such restraints is whether or not the particular restriction is necessary to protect the employer against the agent's use of customer contacts to compete with him afterwards. If the restrictions imposed are no greater than are reasonably necessary to prevent this injury, they are valid.

The appellant is a Missouri corporation and does business in the state of Washington. Respondent's sales for the appellant were largely within the state of Washington. The ancillary clause of the contract is unlimited as to the geography of its area *and to the nature of the services contemplated.* Thus, the terms of the contract would apply even if respondent were employed by the Alexander Film Company in the capacity of a bookkeeper or janitor in the state of Florida. The ancillary contract is in restraint of trade, because it is an unreasonable restriction upon respondent's right to make a living anywhere at any kind of work for a competitor.

The majority opinion tacitly admits that an injunction as broad as the total prohibition of the instant contract would be in restraint of trade. On the other hand, it does not agree with appellant's contention that courts rewrite such contracts so as to enforce them as far as they are reasonable.

Instead, it skirts the issue of restraint of trade upon which the case was tried. It seems to hold that contracts in restraint of trade cannot be enforced by injunction, but that being in restraint of trade does not bar their enforcement by the imposition of forfeitures as penalties for breaches thereof.

The cases relied upon by the majority opinion are all from foreign jurisdictions. The majority, therefore, does not act under the compulsion of Washington precedent.

In a case of first instance, the function of the court is to choose from among all the possible conflicting theories the one it deems soundest as the basis of its decision. Foreign decisions are not precedents in this state (no Federal question is here involved), and we are under no compulsion to accord them any weight whatever. We should do so only to the extent that their reasoning is persuasive of their correctness.

From this point of view, the foreign cases relied upon, in the majority opinion, do not sanction the penalties here in question, because their reasoning is not in point. The contracts therein construed provided that certain insurance renewal commissions would be paid during the *continuation of the employment,* which thus became a *condition precedent* to the existence of the obligation to pay. The proper motive of the parties to those contracts was to induce the continued employment of the agent. They did not purport to impose penalties for competition after the employment ceased.

In the instant case, we have a *condition subsequent,* which constitutes a penalty in fact because the commissions were earned under the terms of the contract and then "forfeited" if respondent did any kind of work anywhere for a film company. No one has suggested that if the respondent had simply quit work his commissions would not have accrued upon the happening of the contract conditions for accrual. Indeed, it was admitted that the commissions were owed but for the forfeiture predicated on the restraint of trade clause of the contract.

This is a clear case of *forfeiture* rather than liquidated damages. It is begging the question to say that a penalty is not a penalty because the parties had a right to contract, did contract, and are, therefore, bound by the terms of the contract providing for the penalties. The appellant drew the contract in question and provided therein for a "forfeiture" of earned commissions.

The trial court agreed with respondent's theory that the contract was in restraint of trade and declined to enforce the penalty for that reason. The judgment can and should be sustained upon that ground.

This court will *sustain* a judgment upon any ground if it should be sustained, but under the law-of-the-case rule it will not *reverse* a judgment upon some novel theory of its own upon which the trial court had no opportunity to pass.

The judgment should be sustained. I dissent.