**Fred R. CANADA, Appellant,**

v.

**ALLSTATE INSURANCE COMPANY et al., Appellees.**

**No. 25697.**

United States Court of Appeals
Fifth Circuit.

May 19, 1969.

Warren M. Goodrich, Robert J. Boylston, Goodrich, Hampton, Boylston & Cummer, Bradenton, Fla., for appellant.

Lawrence J. Robinson, Cramer, Robinson, Ginsburg & Ross, Sarasota, Fla., for appellees.

Before WISDOM, GODBOLD, and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

Fred R. Canada, plaintiff-appellant, was an insurance agent for Allstate (Allstate Insurance Company and Allstate

Fire Insurance Company) from August 22, 1955, until the Company terminated his employment April 4, 1962. Four and a half years later, Canada sued Allstate in a Florida state court to recover commissions on policy renewals subsequent to April 4, 1962. Allstate removed the action under the district court's diversity jurisdiction. The case was tried without a jury on the issue of liability only. The district court held that under Canada's contract with Allstate, "compensation would be payable to the plaintiff only as long as the employment of the plaintiff continued as the agent of the company", and that the parties understood that the contract was terminated on April 4, 1962. We affirm.

■ Under the law of Florida, an agent has no vested right in commissions on renewal premiums after termination of his employment. This right to be paid commissions on renewals "must be based entirely upon the terms of the contract and even where a contract provides for commissions on renewal premiums the contract is construed to require the payment of such commissions only as long as the employee continues as the agent of the company * * *". Barr v. Sun Life Assurance Co. of Canada, 1941, 146 Fla. 55, 200 So. 240, 243. Allstate points to language in the contract conditioning the agent's compensation on his continuing in Allstate's employ:

> Any compensation payable to the agent, under this contract or any supplement thereto, shall be payable only during the continuance of this contract.

Reinforcing this language is another provision in the contract:

> "If this contract shall be terminated by either party, irrespective of whether the Agent is subsequently employed by the Company under another contract, and inasmuch as any compensation payable hereunder is payable only during the continuance of this contract, therefore the compensation which shall have been paid to the Agent at or before such termination, together with the payment of compensation, if any,

then due the Agent under this contract at the time of its termination, but subject to the deduction of any amount due to the Company from the Agent, shall be in full settlement of all claims and demands upon the Company in favor of the Agent, and *all further compensation which a continuance of this contract or of any supplement thereto might have secured to the Agent shall be waived.*" (emphasis added).

To avoid the effect of these unambiguous provisions, Canada asserts that his employment was not terminated in accordance with the contract; that he is entitled to damages, the measure of which, is the value of the renewal premiums. The contract provides:

> "9. This contract shall continue in force until terminated as herein provided. It shall automatically terminate upon the death of the agent and may be terminated by either party hereto at any time with or without cause by mailing to the other, or at his or its last known address, written notice of termination. * * *"

■ Under Florida law, however, the general principle is settled that a written contract "may be altered or modified by an oral agreement if the latter has been accepted and acted upon by the parties in such a manner as would work a fraud on either party to refuse to enforce it". Professional Insurance Corporation v. Cahill, Fla., 1956, 90 So.2d 916, 918. See also Moses v. Woodward, 1933, 109 Fla. 348, 140 So. 651, 141 So. 117, 147 So. 690. The Florida rule accords with the general rule that an oral modification of a written agreement is enforceable if enforcement of the original terms "would be unjust in view of a material change of position in reliance on the subsequent agreement". Restatement (Second) of Contracts § 224 (Tent Draft No. 4, 1968). Florida law, however, goes even further and allows an oral modification of a written contract under circumstances of detrimental reliance even though the contract contains a provision prohibiting its alteration ex-

cept in writing. *Cahill*, 90 So.2d at 918. Although Canada and Allstate may not have expressly agreed to modify the contractual method of notice, we think that in the circumstances of this case the district court could infer an agreement to substitute oral for written notice of termination and enforce this agreement against Canada on the ground of detrimental reliance by Allstate. "An oral modification under these circumstances is permissible even though there was in the written contract a provision prohibiting its alteration except in writing." *Cahill*, 90 So.2d at 918.

The district court found that Canada and Allstate "understood" that the contract was "effectively and unequivocally terminated on April 4, 1962". On that day Mr. Tibbo, district sales manager, telephoned Canada and asked him to be in the St. Petersburg office about nine o'clock in the morning. There he met with Tibbo and with the regional sales manager and his assistant. According to Canada, he was offered $500 if he would resign. When he refused to resign, "they said, 'Well, if you don't sign a resignation, then we will have to fire you". Canada replied, "Well, that is the way it will have to be". They said, "You are fired."

Allstate's assistant personnel manager testified that "the $500 offered Canada, and paid to him was termination pay consisting of a severance allowance of $320 * * * provided when an employee is let go from the company to * * * bridge the gap until he locates other employment", and "accrued vacation pay of $186." These sums were payable to Canada only on the assumption that his employment was *effectively* terminated.

On the day he was discharged Canada turned in his supplies to Allstate. On April 9, 1962, he applied for withdrawal of his credits in a savings and profit sharing fund of Sears, Roebuck and Company employees in which he participated solely because of his employment by Allstate. The application was made on an Allstate form used when employment is terminated. It stated: "EMPLOYMENT TERMINATED: My employment with the Company having terminated, I hereby make application for all the credits to my account which I am entitled to withdraw under the Rules and Regulations (14) of the Fund, to be paid as indicated below."

April 4, 1962, Allstate wrote Canada a form letter entitled "Employees Leaving the Company", explaining the status of his "Group Life Insurance and Hospitalization". The letter explained also that the "Profit Sharing withdrawal forms", which he signed, had been forwarded to Chicago and that a refund check would reach him "within the next two weeks".

Canada rendered no service to Allstate after April 4, 1962. Within thirty days of his termination, he opened his own insurance agency. The commissions on renewals which otherwise would have gone to him went to his successor.

In light of these facts, the language of the contract, and the Florida law, we cannot say that the district court erred. The court's findings of fact were not clearly erroneous. The court correctly applied Florida law to the facts. Allstate and Canada accepted an oral amendment to the contract with respect to notice. The substance of the contract was not changed: the agent was entitled to commissions "only as long as [he] continue[d] as the agent of the company". To permit Canada to lie low for four and a half years during which time Allstate employed a successor and paid the renewals commissions to the successor would, under *Cahill*, work a fraud on the company if the termination were not enforced.

In reaching this conclusion we do not attach special significance to Canada's opening his own agency shortly after his termination of employment with Allstate. Even if he had clearly been the injured party and Allstate guilty of breaching the contract, he would have been under a duty to mitigate damages. 5A Corbin on Contracts § 1233. We attach importance to the totality of circum-

stances indicating that notwithstanding the requirement of written notice, the parties, as the district court held, "understood that the contract was terminated on April 4, 1962" and that the company was "not liable for compensation after the termination".

 Allstate argues on appeal that the action was barred by the one-year statute of limitations on actions for "wages" in section 95.11(7) (b) of the Florida Statutes, F.S.A. The district court found, and we agree, that this case is an action on a written contract and was filed within the five-year period specified in section 95.11(3) of the Florida Statutes, F.S.A. *See* Malone v. Robertson, N.D.Fla.1953, 10 F.Supp. 927. *See also* Union Life Ins. Co. v. Perkins, E.D.Ark.1966, 257 F.Supp. 154, 158.

The judgment of the district court is therefore affirmed.

GODBOLD, Circuit Judge (dissenting):

The appellant entered into a written contract under which his employment continued until terminated by written notice. A rider provided that his compensation was payable only during the continuance of the contract.

If appellant's employment was improperly terminated he had a cause of action for damages because he was deprived of the right to earn the renewal premiums. 9 Williston, Contracts, § 1018 at 185–186 (3d ed.).

The appellant was fired in a manner other than required by the contract, after declining an offer of $500 if he would resign.[1]

The majority thesis, adopting that of the district court, is that the appellant orally "agreed" to a modification of the written contract, which was operative as an amendment because Allstate relied thereon to its detriment, or accepted and acted upon the oral "agreement" so as to work a fraud on Allstate to refuse to carry it out.

The appellant was fired. His employment was at an end. Obviously the last thing Allstate wanted was for him to show up for work and demand he be allowed to continue writing Allstate policies and collecting Allstate premiums. Unquestionably both appellant and Allstate considered the employment at an end.[2] But recognition that he had been discharged was not necessarily recognition that the discharge was rightful under the terms of the contract. Just as every other employee who was terminated (without regard to whether terminated rightfully or wrongfully or orally or in writing) Canada was entitled to collect his accrued vacation pay and his credits in the savings and profit fund. Had he not collected them he would have been entitled to seek them as damages in this suit. After discharge the policy of avoidable consequences of a wrong required him to make reasonable effort to mitigate his losses. 5A Corbin, Contracts, § 1039. Had he waited and sued for his vacation pay and his credits in the fund he might well have been required to prove he had demanded them.

Thus the oral "agreement" found to have been made by appellant springs from actions which under sound policies of the law he is encouraged to take, and if he does not take may adversely affect his rights.

The plainly erroneous rule is not involved. As a matter of law, actions taken by a discharged employee to minimize his damages cannot constitute an agreement to rescind the contract or waive rights.

[1]. The appellee put on no witness to deny Canada's description of the manner and circumstances of his discharge. Canada's testimony is the only evidence on the point.

[2]. That Canada turned in his supplies is of no significance. Under a separate provision of the contract, having nothing to do with continuation or termination, he was required to return all supplies on demand. Also it would have been contrary to the interests of Allstate and the public that an insurance agent recognized by himself and the company to be discharged should remain in possession of the forms with which to write unauthorized policies.

5A Corbin, Contracts, § 1337. In considering the appellant's opening his own agency the majority recognize that he was bound to mitigate damages. Why the same recognition is not given to appellant's other actions is not stated.

My brothers find it would be a fraud "to permit Canada to lie low for four and a half years" during which Allstate paid the renewal commissions to his successor. The statute of limitations is five years. The district court found laches is not applicable. If, after the incidents surrounding his discharge, appellant had a cause of action for refusal to allow him to earn the renewal commissions, with damages measured by the renewal commissions that were his under the contract, he could not, except by expiration of the full statutory period, lose his cause by failing to sue.