THE STATE OF FLORIDA ex rel. E. M. PORTER and DADE COUNTY SECURITY·COMPANY, a building and loan association of the State of Florida, *Plaintiff*, v. H. F. ATKINSON as Circuit Judge, LORA L. LASSETER, joined by her husband, PLATT A. LASSETER, *Defendants*.

146 So. 581.

En Banc.

Opinion filed February 20, 1933.

*James M. Carson, E. B. Kurtz* and *Kurtz & Reed,* for Relators;

*Burdine, Terry & Fleming* and *Richard H. Hunt,* for Respondents.

BUFORD, J.—This case is one of original jurisdiction in which this Court issued a rule nisi in prohibition to Honorable H. F. Atkinson, Judge of the Circuit Court of the Eleventh Judicial Circuit of Florida, Lora L. Lasseter, joined by her husband, Platt A. Lasseter, in a case then pending in the Circuit Court of Dade County wherein it was alleged that the Circuit Judge, on petition of other defendants, the Lasseters, was assuming jurisdiction to appoint a Receiver to take charge of and wind up the affairs of a building and loan corporation known as Dade County Security Company.

The only practical difference between the case presented here and that which was presented in State ex rel. Dade County Security Company, et al., v. Barns, et al., 99 Fla. 1258, 128 So. 860, is that in the Barnes case the record showed that Dade County Security Company was at the time in the hands of a liquidator under appointment of the State Comptroller and that it was sought to supersede the power and authority of the Comptroller to conduct the liquidation, while in the instant case the record shows that the Comptroller had made an order, the effect of which was to turn the affairs of the company back into the hands of the shareholders and directors thereof and to discharge the liquidator. The complainants in the court below contended that the Comptroller had abandoned the liquidation of the company when the affairs of that company were in such condition as to require a continuation of liquidation and when such affairs did not warrant the return of the management of the company to share-holders and directors.

We find no conflict in decisions from other jurisdictions with what was said by this Court in State ex rel. Dade County Security Company, et al., v. Barns, et al., *supra,* in the following language:

"In the exercise of the sovereign power of the State, statutes provide administrative regulations for the supervision of banks and of building and loan associations by the State through the State Comptroller and also provide that under stated conditions relating to insolvency or to illegality of management, the Comptroller may take possession of the property and business of such banks and associations and if necessary or advisable to do so, the Comptroller is by statute, authorized to appoint as his agents liquidators through whom the Comptroller shall administer on such assets and business, the legislative purpose being to facilitate the liquidation and settlement of the affairs of such insolvent banks and associations in the most economical and expeditious manner. Should the Comptroller or his agents violate the law in such administration, the courts may adjudicate the controversies or afford appropriate relief as to particular matters that may be involved in such statutory administration. See Lake Worth Inlet Dist. v. Am. Bank & Trust Co., 97 Fla. 172, 120 So. R. 216; Reddick v. State, 96 Fla. 140, 117 So. R. 510; Amos v. Baird, 96 Fla. 181, 117 So. R. 789; Glidden, Admx., v. Gutelius, 96 Fla. 834, 119 So. R. 140; Atlantic Nat. Bank of Jax. v. Pratt, Receiver, 95 Fla. 882, 116 So. 635; Bryan v. Bullock, 84 Fla. 179, 93 So. R. 182."

Our statute was adopted from the Federal statute known as the National Banking Act. In fact, it differs from that Act only in that the Federal Act places certain power in the Comptroller of the Currency of the United States, whereas the Florida statutes vests the power in the Comptroller of the State. It is a well settled rule of construction

that when a statute is adopted from another state or country and such statute has been previously construed by the courts of such state or country the statute is deemed, as a general rule, to have been adopted with the construction so given to it. See Kidd v. City of Jacksonville, 97 Fla. 296, 120 So. 556, and cases there cited.

In Boyd v. Schneider, 131 Fed. 223, the Circuit Court of Appeals of the Seventh Circuit said:

"The national banking act provides a system for the collection of the assets of an insolvent bank, and their distribution among creditors. The legal machinery for this is a receiver appointed by the comptroller of the currency, and removable by him, in whom is vested all rights of receivership, to the exclusion of all other receivers or assignees; assessments leviable by the comptroller against the stockholders; and procedure for the allowance of claims, the payment of dividends, and the distribution of money thus collected."

In Hulse v. Argetsinger, 12 Fed. (2nd Ed.) 933, the Court said:

"The statute confers upon the Comptroller of the Currency, when satisfied of the insolvency of a banking association, the right to appoint a receiver and enforce existing liabilities of directors and shareholders and administer the assets and convey the same on order of the court. Sec. 5234, R. S. (Comp. St. No. 9821). This provision, it seems to me, plainly gives the Comptroller entire control of the insolvent bank, with the evident purpose of speedily winding up its affairs regardless of the wishes of the stockholders. (4, 5) 2. The receiver is not the officer of the court, but is the agent of the United States, charged with the duty of investigating and redressing maladministration, waste and dissipation by directors and stockholders in the same man-

ner as a creditor or the shareholders on behalf of the bank might do."

Other states have adopted statutes like ours, all of which appear to have been taken from the National Banking Act and it appears that in such states it has been uniformly held that such statutes vested in the Comptroller or Banking Commissioner, as the case might be, exclusive power as to the appointment of general reecivers and that this power may not be abrogated by the appointment of court receivers except in cases where it is shown that the Comptroller or his agents are violating the law in such administration, or in cases where the power of the court is invoked to adjudicate controversies or afford appropriate relief as to particular matters that may be involved in such statutory administration. See the authorities cited, *supra*.

The same rule which has been adhered to in regard to banks has been uniformly applied to the building and loan associations where the statutes included such associations within their purview. In State ex rel. Bettman, Attorney General, v. Court of Common Pleas of Franklin County, et al., 124 Ohio State, 269, 178 N. E. 258, in an opinion prepared by Mr. Justice MATTHIAS that Court said:

"The statutes to which attention has been directed provide the specific and adequate remedy which serves to protect, conserve and secure an equitable distribution of the assets of such company to those entitled thereto. The adequacy of the remedy provided to protect and preserve the interests of all concerned, argues convincingly for its exclusiveness. The application of similar rules of statutory construction warrants the conclusion that the special provisions of Section 687, General Code, constitute an exception to the general statutory provisions relating to receiverships. We are of the opinion that by these provisions the Legis-

lature has provided not only an exclusive method for the supervision and control of the affairs of building and loan associations, but also an exclusive method of procedure for the dissolution of such associations and the liquidations of their assets, and has thereby limited the jurisdiction of the common pleas court."

After citing numerous authorities in support of this enunciation, the opinion quotes at length from the case of Ulmer v. Falmouth Loan and Building Association, 93 Me. 302, 45 Atl. 320, and therein it was said:

"It is to be observed that these institutions possess a public character, and it is for the interest of the public, not only that they shall be subjected to judicial investigation when they ought to be, but also that they shall not be so subjected when they ought not to be. Unusual means are placed in the hands of the bank examiner to ascertain their condition, and it cannot be presumed that he will fail to act in a proper case. If one shareholder may maintain a bill, so may every other. There is no limit. To subject loan and building associations to vexatious, harassing and expensive litigation caused by the suits of possibly multitudinous shareholders who may be dissatisfied, with or without reason, would greatly impair their usefulness, if not imperil their existence."

As herebefore stated, the complainants in the court below based their right to the relief prayed upon the allegation that the liquidation of the building and loan association had been abandoned by the Comptroller when the affairs of that association required the continuation of their administration by a receiver. We have heretofore held that the power is vested in the Comptroller to take charge of such institutions when the condition thereof warranted liquidation and such holding carries with it, necessarily, the adjudication that it is the duty of the Comptroller to proceed as pre-

scribed by statute with the liquidation of such institutions when conditions are such as to vest in him the power and authority to so proceed. It, therefore, appears that if the contention of the complainants was based upon facts, and in truth and in fact the Comptroller was attempting to abandon the liquidation of the building and loan association wrongfully and without having performed in that regard those functions which the statute required him to perform, they had adequate remedy at law to coerce the Comptroller by mandamus to continue the performance of his duties. On the other hand, if the affairs of the building and loan association under the supervision of the Comptroller through his agents, had reached that point where liquidation by a supervisory power was no longer needed or warranted, the Comptroller would be justified in closing the liquidation under his supervision and returning the same to the shareholders and directors and, if conditions were such that the Comptroller would be justified in doing that then there could be no justification for the appointment of a Receiver.

There is no fraud alleged as a basis for invoking the jurisdiction of the court of equity for the appointment of a Receiver.

There appears to us to be no difference in effect between the status of the parties in this case and the status of the parties in the case of State ex rel. Bettman, Attorney General, v. Court of Common Pleas of Franklin County, *supra,* which decided that the statutory method provided for the supervision and control of the affairs of building and loan associations was the exclusive method of procedure for the dissolution and liquidation of such associations, and that the jurisdiction otherwise resting in the courts was thereby limited because the statutory method was a specific and adequate remedy which served to protect, conserve and se-

cure an equitable distribution of the assets of a building and loan association to those entitled thereto.

The statutes here under consideration provide the specific and adequate remedy which serves to protect, conserve and secure an equitable distribution of the assets of building and loan associations and that such method is exclusive except in cases of fraud which give rise to a special equity jurisdiction and as to particular matters which may be involved in such statutory administration which may warrant the intervention of the court to protect particular rights or afford particular relief. The supervision of such institutions as banks and building and loan associations is within the police power of the State and the State in the exercise of that police power may designate the manner and method by and through which such administration and supervision will be exercised. The State, through the Legislature, has placed the exercise of this power in the hands of the administrative department of the government in the office of the Comptroller to the exclusion of judicial supervision, except under the conditions hereinbefore referred to and except as in such statute is provided.

For the reasons stated, the demurrer should be and the same is hereby overruled and the peremptory writ of prohibition is ordered issued.

DAVIS, C. J., and WHITFIELD and TERRELL, J. J., concur.