229 So.2d 276 (1969)
Robert M. AKEY, et al., Known As Watson Clinic, a Medical Partnership, Appellants,
v.
Frank P. MURPHY, Appellee.
No. 68-60.
District Court of Appeal of Florida. Second District.
December 12, 1969.
Rehearing Denied January 16, 1970.
*277 William O.E. Henry, of Holland & Knight, Lakeland, for appellants.
Robert L. Trohn, of Langston, Massey, Trohn & Williams, Lakeland, for appellee.
HOBSON, Chief Judge.
Appellants were plaintiffs below and are practicing physicians who formed a partnership known as Watson Clinic, located in Lakeland, Florida. Hereafter, appellants will be referred to as Watson Clinic. Appellee is a medical doctor who was, prior to the filing of the suit below, a partner in Watson Clinic.
Appellee voluntarily withdrew as a partner of Watson Clinic on July 4, 1967. Prior to his withdrawal he had entered into a written agreement with Watson Clinic to the effect that if he withdrew as a partner he would not practice medicine within 30 miles of Lakeland, Florida for a period of two years.
On July 7, 1967, Watson Clinic filed suit to enforce the aforementioned agreement. After taking extensive testimony the trial court entered final judgment which is the subject of this appeal and found therein that the agreement was reasonable in all respects; however, the court in exercising its discretion reduced the period of time contained in the agreement from two years to a period of 30 days from the date of the final judgment. The court gave as the reason for such reduction in period of time the fact that the appellee withdrew from the partnership for reasons of his health.
Watson Clinic appeals the final judgment and contends that the trial court, by reducing the two-year period to only 30 days, abused its discretion to such an extent that the object of Section 542.12, Fla. Stat. 1967, F.S.A., was nullified.
Appellee filed cross-assignments of error and argues that the written agreement between appellee and Watson Clinic is void and unenforceable under Section 542.12, Fla. Stat. 1967, F.S.A.
In support of appellee's contention he cites the case of Bergh v. Stephens, Fla. App. 1965, 175 So.2d 787.
Section 542.12, Fla.Stats. 1967, F.S.A., reads as follows:

"Contracts in restraint of trade invalid; exceptions. 
"(1) Every contract by which anyone is restrained from exercising a lawful profession, trade or business of any kind, otherwise than is provided by subsections (2) and (3) hereof, is to that extent void.
"(2) One who sells the good will of a business, or any shareholder of a corporation selling or otherwise disposing of all of his shares in said corporation, may agree with the buyer, and one who is employed as an agent or employee may agree with his employer, to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a reasonably limited time and area, so long as the buyer or any person deriving title to the good will from him, and so long as such *278 employer continues to carry on a like business therein. Said agreements may, in the discretion of a court of competent jurisdiction be enforced by injunction.
"(3) Partners may, upon or in anticipation of a dissolution of the partnership, agree that all or some of them will not carry on a similar business within a reasonably limited time and area.
"(4) This section does not apply to any litigation which may be pending, or to any cause of action which may have accrued, prior to May 27, 1953."
The agreement between appellee and Watson Clinic falls within subsection (1) of the quoted statute and is void unless it comes within the exception set out in subsection (3). In the Bergh case, supra, the distinguished Judge Donald K. Carroll held at page 789 that:
"In our opinion, the restrictive provisions in the said contracts, purporting to restrict the plaintiff from engaging in the `competitive practice of medicine for a period of five years within a distance of ten miles of the Pureal Hospital,' are null and void under subsection (1) of Section 542.12 and are not excepted from the effect of that subsection by virtue of either subsection (2) or subsection (3)."
The facts in the Bergh case, supra, concerned an agreement whereby an employee in the practice of medicine for his employer agreed that upon the completion of his association with his employer he would not engage in the competitive practice of medicine for a period of five years within a distance of 10 miles of the Pureal Hospital. As this agreement concerned an employee-employer relationship the exception in which the contract in restraint of trade fell was subsection (2).
In the Bergh case, supra, it was held on pages 789-790:
"It will be noted in Section 542.12, quoted above, that subsection (1) thereof declares void any contractual provision by which anyone is restrained from exercising `a lawful profession, trade or business of any kind,' other than as is provided by subsections (2) and (3). On the other hand, subsection (2) mentions the word `business' three times but does not once mention the word `profession' or, for that matter, the word `trade.' The portion of that subsection relied on by the appellant here is expressly connected with the operation of a business  such portion providing that an employee may, under certain specified circumstances, agree with his employer `to refrain from carrying on or engaging in a similar business * * *.'
"Inasmuch as subsection (1) of Section 542.12 is made expressly applicable to a lawful `profession, trade or business' and subsection (2) thereof mentions only the word `business' in referring to the occupation to which the exception applies, we must construe the said statutory provisions with the aid of the cardinal rule of statutory construction traditionally referred to as `expressio unius est exclusio alterius.' * * *"
* * * * * *
"* * * [W]e hold in the present appeal that the Legislature's express mention of business above in subsection (2) of Section 542.12 is the exclusion of profession, as well as trade, which two terms are linked with business in subsection (1) in the enumeration of the occupations covered by the said subsection (1), unless provision is otherwise made in subsections (2) and (3). This construction is made more logical and natural by considering the fact that the Legislature enacted subsections (1) and (2) of Section 542.12 at the same time (both being provisions in Chapter 28048, Laws of Florida, Acts of 1953), so that the Legislature, by omitting from subsection (2) the word `profession,' which had been a key word in subsection (1), clearly intended to omit contracts restraining the exercise of a profession from the effect of subsection (2)."
*279 In the instant case the learned trial judge held that the Bergh case, supra, was not applicable but did not give his reasons for so holding. We can only assume that he thought the Bergh case not applicable because it dealt with subsection (2) and we are herein concerned with subsection (3). We are unable to make any distinction between subsection (3) and subsection (2) in any respect when applying the rule of law laid down in Bergh. Therefore, agreeing with the law of the Bergh case, we hold the written agreement involved herein to be void as far as it purports to restrain the appellee from exercising the lawful profession of medicine and that the final judgment should be and it is
Reversed.
PIERCE, J., concurs.
MANN, J., dissents with opinion.
MANN, Judge (dissenting).
In the search for meaning there are no shortcuts, and Latin is no substitute for thought. Of course expressio unius est exclusio alterius if the alterius is excluded from the unius by context or common sense. But in the statute we here interpret, "business" is first used following the words "profession, trade or" and followed by "of any kind." Thus where "business" recurs in subsections (2) and (3) it is used in its generic sense which includes within ejusdem generis "profession" and "trade." At least the Attorney General, mirabile dictu, so thought in 1964 when he opined that physicians could indeed enter into such an agreement as is here involved. Op.Atty.Gen. 064-121. But neither expressio nor ejusdem determines the correct interpretation of a statute. These Latin labels are affixed after interpretation by us judges. When they are taken seriously, as expressio unius is here, as factors in the process of decision, the result often distorts legislative intent.
The first step in statutory construction is a reading of the entire statute:
"542.12 Contracts in restraint of trade invalid; exceptions. 
"(1) Every contract by which anyone is restrained from exercising a lawful profession, trade or business of any kind, otherwise than is provided by subsections (2) and (3) hereof, is to that extent void.
"(2) One who sells the good will of a business, or any shareholder of a corporation selling or otherwise disposing of all of his shares in said corporation, may agree with the buyer, and one who is employed as an agent or employee may agree with his employer, to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a reasonably limited time and area, so long as the buyer or any person deriving title to the good will from him, and so long as such employer continues to carry on a like business therein. Said agreements may, in the discretion of a court of competent jurisdiction be enforced by injunction.
"(3) Partners may, upon or in anticipation of a dissolution of the partnership, agree that all or some of them will not carry on a similar business within a reasonably limited time and area.
"(4) This section does not apply to any litigation which may be pending, or to any cause of action which may have accrued, prior to May 27, 1953."
I cannot read into that statute any intention on the part of our Legislature to enact a blanket prohibition against contracts not to compete and then to permit them between those engaged in business but not between those engaged in professions or trades.
Bergh v. Stephens can be distinguished, but in all due candor it ought to be explained, and so that there will be no doubt, we ought to certify this question as one of great public interest in order to settle *280 a question that must arise with some frequency in the planning of professional partnerships.
So distinguished a jurist as Judge Donald Carroll needs no cowed concurrence. I would strongly presume his opinion correct, but I respectfully suggest that Bergh is wrongly decided and I would suggest why: that case was argued as if Section 542.12 were a statute in derogation of the common law to be "strictly construed" and the cases cited to the Court of Appeal for the First District on the validity of contracts between employer and employee, which was the relationship of the physicians in Bergh, were from other states. The appellee properly pointed out that our Supreme Court had held invalid such contracts in Love v. Miami Laundry Co., 1934, 118 Fla. 137, 160 So. 32, and that the common law right claimed by the appellant was nonexistent.
In fact, there was a good argument to be made for the appellant in Bergh which the appellants here make. That is that the statute is borrowed from other jurisdictions and the validity of contracts such as this one has been upheld elsewhere. California,[1] Alabama[2] and Oklahoma[3] enacted similar statutes before we did and decisions in those states[4] are cited as persuasive here.[5]
This case may be distinguished from Bergh in that there the relationship was that of employer and employee, in which the employee is thought to have unequal bargaining power and hence was protected against contracts of this nature. Love v. Miami Laundry Co., supra. But our Supreme Court had held that partners, presumably dealing on an equal footing, could validly contract not to compete in connection with the sale of goodwill upon dissolution of partnership. Massari v. Salciccia, 1931, 102 Fla. 847, 136 So. 522.
But this argument strikes me as no more forceful than expressio unius. I am content respectfully to differ with Judge Carroll and to note how dependent we appellate judges are on the lawyers who brief and argue the cases we consider. This one is well briefed. Had we been cited nothing more than was cited to the First District we well might have fallen gladly on such a formidable phrase as expressio unius est exclusio alterius.
In truth the time is overdue to rescue the law of statutory interpretation from Latin as the Second Vatican Council rescued the Mass. Max Radin wrote: "In all this what room is there for the standard `canons of interpretations,' for ejusdem generis, expressio unius, and the entire coterie or band of phrases and tags and shibboleths which are so wearisomely familiar? I should be tempted to deny that they have ever resolved an honest doubt, if a general negative were provable. Certainly it is hard to find an instance in which they did more than invest with the appropriate symbolic uniform a conclusion that should have been quite as respectable in the ordinary civilian clothes of sober common sense." A Short Way With Statutes, 56 Harv.L.Rev. 388 (1942).[6]
*281 The Bergh decision has for me sufficient vitality, however, to warrant affirming the circuit judge's judgment providing for a 30-day injunction in spite of the two-year provision of the contract. We have approved the shortening, for equitable considerations, of time for which a person is precluded from engaging in a particular activity. McQuown v. Lakeland Window Cleaning Co., Fla.App. 1962, 136 So.2d 370. It is clear in this case that the appellants were mainly interested in the judicial validation of their partnership agreement, bore no ill will toward the appellee, and are comforted by the learned trial judge's indication that future violations of the agreement will be viewed against the backdrop of his ruling that Bergh v. Stephens did not invalidate the agreement in the Tenth Circuit. Accordingly, I do not find the brief time for which the circuit judge enjoined Dr. Murphy from practicing in Lakeland unreasonable.
I would affirm.
NOTES
[1] California Business & Professions Code, §§ 16600-16602 (1941).
[2] 9 Alabama Code, §§ 22-24 (1940).
[3] 15 Oklahoma Statutes, §§ 217-219 (1951).
[4] Crutchett v. Lawton, 139 Cal. App. 411, 33 P.2d 839 (3d D.C.A.Cal. 1934); Ragsdale v. Nagle, 106 Cal. 332, 39 P. 628 (1895); Herrington v. Hackler, 181 Okla. 396, 74 P.2d 388 (1937); Wesley v. Chandler, 152 Okla. 22, 3 P.2d 720 (1931); Wall v. Chapman, 84 Okla. 114, 202 P. 303 (1921); Threlkeld v. Steward, 24 Okla. 403, 103 P. 630 (1909); Moore v. Snodgress, 203 Okla. 572, 223 P.2d 1080 (1950). See also a case decided after the enactment in 1953 of § 542.12, Brown v. Stough, 292 P.2d 176 (Okl. 1956).
[5] Gray v. Standard Dredging Co. (1933) 109 Fla. 87, 149 So. 733, following New York decisions on a statute later adopted in Florida.
[6] A comprehensive bibliography will be found in Sanders and Wade, Legal Writings on Statutory Construction, 3 Vand. L.Rev. 569 (1950). This issue of the Vanderbilt Law Review contained an excellent symposium on interpretation which includes Karl Llewellyn's article, Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes are to be Construed, at page 395 et seq.