238 So.2d 94 (1970)
Robert M. AKEY et al., Known As Watson Clinic, a Medical Partnership, Petitioners,
v.
Frank P. MURPHY, Respondent.
No. 39419.
Supreme Court of Florida.
July 13, 1970.
*95 William O.E. Henry, of Holland & Knight, Bartow, for petitioners.
Robert L. Trohn, of Langston & Massey, Lakeland, for respondent.
ROBERTS, Justice.
This cause is before the court on direct conflict certiorari to review the decision of the District Court of Appeal, Second District, in Akey v. Murphy, Fla.App. 1970, 229 So.2d 276. Because of a conflict on the same point of law with the decision of the District Court of Appeal, Fourth District, in White v. Allen, Fla.App. 1970, 232 So.2d 766, we issued the writ.
The controversial point has to do with the interpretation of Subsection (3) of Section 542.12, Fla. Stat. 1969, F.S.A. This statute was enacted in 1953, as Chapter 28048, Laws of Florida, Acts of 1953, to provide generally that contracts restraining the exercise of "a lawful profession, trade or business of any kind" are invalid; however, the statute contains the following exceptions: Subsection (2) authorizes such a contract in connection with the sale of the good will of a business or between an employer and an employee when reasonably limited as to time and area; and Subsection (3) provides that partners may agree that, upon the dissolution of the partnership, "all or some of them will not carry on a similar business within a reasonably limited time and area."
The case sub judice is concerned with a contract between partners engaged together in the practice of medicine under the name "Watson Clinic." The partnership contract provided that, upon the withdrawal of a partner, he would not practice medicine within thirty miles of Lakeland (the location of the clinic) for a period of two years. The withdrawing partner, the respondent here, declined to abide by the agreement, and this suit by the remaining partners, the petitioners here, followed. The chancellor found that the restrictions were reasonable as to time and area, were no greater than necessary to protect the petitioners' legitimate interests, were not unduly harsh and oppressive on the respondent, nor injurious to the public interest.
On appeal, the appellate court, with one judge dissenting, reversed. The basis of the majority decision was that the exceptions contained in Subsections (2) and (3) applied only to a "business" and did not include a "profession." The court relied upon Bergh v. Stephens, Fla.App. 1965, 175 So.2d 787, in which the First District Court of Appeal had so construed Subsection (2) in a case involving an employer-employee relationship in the practice of medicine. In his dissenting opinion in the case sub judice, Judge Mann pointed out that a strong argument made here had not been made in the Bergh case, namely, that our statute is borrowed from other jurisdictions in which the validity of contracts such as that here reviewed had been upheld prior to 1953, the date of the enactment of our statute. As noted above, in White v. Allen, supra, 232 So.2d 766, the Fourth District Court of Appeal agreed with Judge Mann and held that the term "business" as used in Subsection (3) of Section 542.12, supra, also includes a profession or trade. We agree.
It has long been the rule in this state that the adoption of a statute of another state adopts also the construction thereof by the courts of that state. As set *96 forth in Duval v. Hunt, 34 Fla. 85, 15 So. 876 (1894),
"Besides our adoption of the terms of the statute itself, according to the well-settled rule, we also adopt, as forming an integral part of the same, any known and settled construction that had been placed thereon by the courts of the state from which it has been adopted, in so far as that construction is not inharmonious with the spirit and policy of our own general legislation on the same subject."
This rule has been many times followed by this court. See Gray v. Standard Dredging Co., 109 Fla. 87, 149 So. 733 (1933); State ex rel. Porter v. Atkinson, 108 Fla. 325, 146 So. 581 (1933); and, most recently, Blank v. Yoo Hoo of Florida Corp., Fla. 1969, 222 So.2d 420. It seems that the statutes of California and Oklahoma prohibiting contracts restraining a person from engaging in any "lawful profession, trade, or business of any kind" each contain an exception almost identical to Subsection (3) of Section 512.42, supra, applicable in terms to agreements not to carry on "a similar business" upon the dissolution of a "partnership". The courts of California and Oklahoma construed this provision of the statute as applying to partnerships for the purpose of engaging in a profession as well as other business relationships. See Crutchett v. Lawton, 1934, 139 Cal. App. 411, 33 P.2d 839; Ragsdale v. Nagle, 1895, 106 Cal. 332, 39 P. 628; Herrington v. Hackler, 1937, 181 Okla. 396, 74 P.2d 388; Wesley v. Chandler, 1931, 152 Okla. 22, 3 P.2d 720; Wall v. Chapman, Okla. 1921, 84 Okla. 114, 202 P. 303; Threlkeld v. Steward, 1909, 24 Okla. 403, 103 P. 630; Moore v. Snodgress, 1950, 203 Okla. 572, 223 P.2d 1080. See also Brown v. Stough, Okl. 1956, 292 P.2d 176 (decided after Florida adopted a similar statute in 1953) pointing out that the sale of a withdrawing partner's interest in the business to partners who continue the business, includes the retiring partner's interest in the good will of the firm, even though no mention is made thereof in the contract restricting the retiring partner from engaging in the profession for a reasonable time and area.
An agreement among partners that a withdrawing partner will refrain from engaging in the partnership business within a reasonable area for a reasonable time is not contrary to public policy in general, see 5 Williston on Contracts, Sec. 1644, nor to the public policy of this state, see Massari v. Saliciccia, 102 Fla. 847, 136 So. 522 (1931). Thus, the exception contained in Subsection (3) of Section 542.12, supra, is merely a declaration of the existing public policy of this state. No real distinction between business partners associated together for the practicing of a trade or profession and those engaged in a "business" such as the sale of groceries (as in the Massari case, supra) is immediately apparent, insofar as the public policy in question is concerned. Cf. DeVaney v. Rumsch, Fla. 1969, 228 So.2d 904, holding that the "professional-business" distinction made in connection with the imposition of ethical and moral obligations on professional persons had no validity and was not applicable insofar as the constructive-service statute, Section 48.181, Fla. Stat. 1969, F.S.A.  providing for service upon the secretary of state as the agent of nonresidents engaging in business in this state  was concerned.
It is contended on behalf of respondent that the statute must have been intended to apply only where there is a "reasonable interest", such as the sale of the good will of a business, to be protected by the restrictive covenant in question. However, as pointed out by the chancellor in his final decree, the purpose of the restraining covenant here was to "assist in assuring the continuity and growth of the medical group in the achievement of its public goals and objectives." The covenant was a part of the partnership agreement entered into by each partner in the clinic as a condition precedent to his becoming a part of the clinic partnership. It would appear, therefore, that there was a "reasonable interest" *97 to be protected by the restraining covenant. And, as noted above, it has been held that the transfer of good will is implied in connection with the withdrawal of a partner from a medical clinic, even though the partnership agreement did not mention "good will". See Brown v. Stough, supra, 292 P.2d 176; and 24 Fla.Jur., Partnerships, Sec. 56, stating that the good will of a partnership is "usually considered part of the property and assets of the firm, in the absence of a contract, expressed or implied, to the contrary."
For the reasons stated, it must be held that the appellate court's interpretation of Subsection (3) of Section 542.12, supra, was erroneous; and its decision in this respect should be quashed.
The petitioners have argued another point here, as they did in the appellate court, which we think has merit. As noted above, the chancellor held that the restrictive covenant was within the exception provided by Subsection (3), supra, and that it was reasonable as to time and as to area. He also found, as matters of fact, that the restrictions were no greater than were necessary to protect petitioners' legitimate interests, were not unduly harsh and oppressive on the respondent, and were not injurious to the public interest. However, he stated that he would "limit the effect of the restriction because the defendant withdrew from the partnership for reasons of his health." He thereupon reduced the two-year period to thirty days and also allowed the respondent to continue to treat his current patients and to take emergency orthopedic and charitable cases. In other words, his decree, for all practical purposes, nullified the restrictive covenant in respondent's contract. The petitioners' assignment of error in this respect was, in our opinion, well taken.
Restrictive covenants of the type here in question for a two-year period are generally upheld as reasonable. See the cases collected in the annotation in 41 A.L.R.2d 15. Longer periods of time in contracts affecting physicians have been upheld by the courts. See Marshall v. Covington, 1959, 81 Idaho 199, 339 P.2d 504 (3 years); Bradford v. Billington, Ky. 1957, 299 S.W.2d 601 (6 years); Daniel v. Goesl, 1960, 161 Tex. 490, 341 S.W.2d 892 (3 years); Cogley Clinic v. Martini, 1962, 253 Iowa 541, 112 N.W.2d 678 (3 years); Lovelace Clinic v. Murphy, 1966, 76 N.M. 645, 417 P.2d 450 (3 years); Crutchett v. Lawton, 1934, 139 Cal. App. 411, 33 P.2d 839 (5 years); McCallum v. Asbury, Or. 1964, 238 Or. 257, 393 P.2d 774 (10 years).
In Capelouto v. Orkin Exterminating Co. of Florida, Fla. 1966, 183 So.2d 532, the court said that such restrictive agreements are not ipso facto enforceable as written, and that such contractual provisions
"* * * will generally be enforced in such way as to protect the legitimate interests of the employer without doing harm to the public interest, and without inflicting an unduly harsh or oppressive result on the employee."
And in McQuown v. Lakeland Window Cleaning Co., Fla.App. 1962, 136 So.2d 370, and American Building Maintenance Co. of Oakland v. Fogelman, Fla.App. 1964, 167 So.2d 791, two of our district courts of appeal declined to overturn a chancellor's exercise of his discretion in reducing to one year contractual restrictions of five and three years, respectively. But see Atlas Travel Service, Inc. v. Morelly, Fla.App. 1957, 98 So.2d 816, in which the appellate court noted that the chancellor's discretion is not "arbitrary or absolute" and must be exercised "to the end that the object of the statute may not be nullified."
We are unable to reconcile the chancellor's findings of fact and conclusions of law above referred to, with his determination that the two-year contract, although lawful, should be reduced in effectiveness to a period of thirty days. In our opinion, from a practical standpoint, this nullified the contract which he had upheld and it was error for him to do so.
*98 Accordingly, the decision of the District Court of Appeal under review is quashed, with instructions that the cause be remanded to the trial court to enter a decree upholding and enforcing the contract between the parties and for further proceedings not inconsistent with this opinion.
It is so ordered.
ERVIN, C.J., and DREW, THORNAL and CARLTON, JJ., concur.