245 So.2d 854 (1971)
Russell B. FLAMMER, Petitioner,
v.
Glenn E. PATTON, William E. Thompson, Robert A. Tucker, Benjamin P. Frye and Francis X. Crowley, As Trustees in Charge of the Employees' Pension and Death Benefit Plan of Beneficial Finance Co., Respondents.
No. 38827.
Supreme Court of Florida.
March 17, 1971.
*855 J.A. McClain, Jr., of McClain, Turbiville & Heller, Tampa, for petitioner.
Thomas C. MacDonald, Jr., of Shackleford, Farrior, Stallings & Evans, Tampa, for respondents.
CARLTON, Justice:
We now consider whether respondents, as trustees of a loan corporation's pension fund, have the power to withhold petitioner's pension payments so long as he is employed by the loan department of a national bank. In a declaratory judgment proceeding initiated by petitioner, Circuit Court, Hillsborough County, ruled that the trustees were properly exercising powers reserved to them under a provision in the loan corporation's pension plan. The provision permitted the trustees to suspend or terminate benefits to any retiree considered by the trustees to be in the employ of a competitor.
The District Court of Appeal, Second District, affirmed upon petitioner's appeal through an opinion reported at 223 So.2d 750 (2nd D.C.A. Fla. 1970). Our jurisdiction results from a conflict between the District Court's opinion and Davis v. Ebsco Industries, Inc., 150 So.2d 460 (3rd D.C.A. Fla. 1963). Article V, Section 4(2), Florida Constitution, F.S.A. By our decision today, we reverse the District Court and remand this cause with instructions for further proceedings.
Petitioner retired on December 31, 1964, after thirty-three years of service with Beneficial Finance Company, or with one of its subsidiary small loan companies. He was eligible for monthly pension benefits in the amount of $256.38 under a noncontributory pension plan, known as the "Employees' Pension and Death Benefit Plan," *856 which was put into effect after he had been with Beneficial for several years. The plan included the following provision under Section 2A(6):
"Any right or claim to any Retirement Allowance which any employee, retired employee or his beneficiary may have (a) shall terminate, or shall be discontinued or suspended for such periods as the Trustees may determine, if the Trustees shall find that such employee or retired employee has been engaged in a business or occupation in competition with that of the Corporation or any subsidiary thirty days or more after the Trustees have given him written notice to cease his participation in such business or occupation * * *."
Several months after his retirement, petitioner was taken on by the National Bank of Tampa as a loan officer, discharging duties as head of the installment loan department. The respondent Trustees notified petitioner that he was considered as "employed by a competitor" under Section 2A (6), and that his benefits would be suspended unless he left the National Bank. Petitioner gave the Trustees the following response: (1) that the National Bank did not seek or solicit the kind of loan business offered by Beneficial; (2) that a check of transactions indicated that Beneficial's clients very rarely did business with the National Bank's loan department; (3) that the National Bank had never advertised his presence or sought to make capital by drawing attention to his employment with the Bank. The Trustees adhered to their position, pointing out that they could not monitor his activities, and that to make an exception in his case would be to create an undesirable precedent. Petitioner's benefits were suspended.[1]
In declaratory judgment proceedings, petitioner questioned the sufficiency of the evidence of competition and attacked Section 2A(6) of the pension plan as void under Fla. Stat. § 542.12, F.S.A., a statute controlling contracts in restraint of trade. The Circuit Court held that the plan was analogous to an employment contract, and that under Barr v. Sun Life Assurance Company of Canada, 146 Fla. 55, 200 So. 240 (1941), such contracts, by analogy, would not be considered in violation of Fla. Stat. § 542.12, F.S.A. The Circuit Court also held that sufficient evidence was introduced into the record to support a finding of competition by the Trustees. The District Court affirmed the judgment rendered below, finding that the analogy, was valid and that the evidence of competition was sufficient. Petitioner contests both of these holdings.
In our view, this case is to be distinguished from Barr, because two inherently different concepts are involved. In Barr, an insurance agent left one insurance company for employment with another, and then sought to obtain commissions on policies he had handled for the first company. The commission contract stated that commissions would be given to agents for the first ten years of the policy life as each yearly renewal payment from the policy-holder was received. The contract also stated that these renewal commissions would be forfeited if the agent left and took work with a competitor.
In its review of the case, this Court held that this was not a contract in restraint of trade because nothing in it precluded the agent from working elsewhere, and that by contract the agent had agreed to cooperate with the company for a period of ten years for each policy. Two significant factors regarding Barr should be recognized. First, the contract referred to specific policies which the company would have to continue servicing even while the agent was working for a competitor. Second, *857 the period of each contract obligation was for a specific period of ten years, after which the agent was free to do whatever he wished.
In the instant case, the benefits were not the result of specific policies or negotiations or contracts, but rather the benefits accrued as the result of years of service; thus, no contract was being protected as in Barr. Also, in Barr an agent was free to receive benefits for a specific period, and then to join another company without loss, whereas in the instant case, the restrictions on receipt of benefits continue until the death of the petitioner.
This last factor  that the restrictions are unending  brings us to the paramount issue in this case: whether Fla. Stat. § 542.12, F.S.A., embraces non-competition provisions in pension plans. Under the common law, courts historically have been hostile to contracts of any nature which place restaints upon former employees. Contract provisions restraining or hindering a man's right to follow his calling were considered as void against public policy. See Standard Newspapers, Inc. v. Woods, 110 So.2d 397 (Fla. 1959); Capelouto v. Orkin Exterminating Co. of Fla., 183 So.2d 532 (Fla. 1966). Before enactment of Fla. Stat. § 542.12, F.S.A. in 1953, this Court consistently treated non-competition provisions harshly. Arond v. Grossman, 75 So.2d 593 (Fla. 1954); Love v. Miami Laundry Co., 118 Fla. 137, 160 So. 32 (1934), aff'd on rehearing, 1935; Simms v. Burnett, 55 Fla. 702, 46 So. 90 (1908). Only when mutuality and fairness were demonstrated beyond peradventure of doubt, would non-competition provisions be enforced. See Thompson v. Shell Petroleum Corp., 130 Fla. 652, 178 So. 413 (1938).
The common law's animosity to non-competition restraints was based upon sound reasoning, but frequently the results unfairly discriminated against sound business practices. Note the dissenting opinion of Mr. Justice Drew in United Loan Corporation of Tampa v. Weddle, 77 So.2d 629 (Fla. 1955). Employers seeking to temper the immediate impact of a former employee's potential competitive advantage found that the question of how this might legally be done was clouded with uncertainty.
In 1953, the Legislature responded to this situation by enacting Fla. Stat. § 542.12, F.S.A., which modified the common law to a considerable extent, although the basic policy of the common law was preserved. Section 1 of the statute announced:
"(1) Every contract by which anyone is restrained from exercising a lawful profession, trade or business of any kind, otherwise than is provided by subsection (2) and (3) hereof, is to that extent void."
Subsections (2) and (3) provided that restrictions were henceforth allowable, although enforcement was discretionary with the judiciary, where they embraced "a reasonably limited time and area":
"(2) One who * * * is employed as an agent or employee may agree with his employer, to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a reasonably limited time and area * * *. Said agreements may, in the discretion of a court of competent jurisdiction be enforced by injunction.
"(3) Partners may, upon or in anticipation of a dissolution of the partnership, agree that all or some of them will not carry on a similar business within a reasonably limited time and area." (Emphasis supplied.)
Precisely what will be considered a "contract by which anyone is restrained" is not defined by the statute, but the breadth of the statutory language clearly implies a wide range of applicability. Certainly this Court has taken a broad view of the statute's application; compare our recent decision in Akey v. Murphy, 238 So.2d 94 *858 (Fla. 1970), with Bergh v. Stephens, 175 So.2d 787 (1st D.C.A. Fla. 1965). The pertinent question is whether the contract in effect impedes or restrains a former employee from exercising his lawful profession, trade or business. If a contract has this effect, it violates public policy as announced through the statute, unless it conforms to the statutory requirements of reasonable limitation as to time and area.
Did the pension plan give rise to a substantial impediment or restraint upon petitioner's further employment? We think it did. After more than three decades of continued service, petitioner was entitled to $256.38 in monthly benefits. Whether petitioner could not live on this amount, or whether he desired to continue an active life, we do not know; in any event, he accepted a position with the National Bank after turning down an offer of employment with a loan company similar to Beneficial. According to testimony contained in the record, the National Bank did not seek a small loan clientele and that is why petitioner accepted the position.[2]
We find it indefensible for respondents to contend that petitioner was free to accept any employment he chose, so long as he was willing to surrender the benefits earned as a result of more than thirty years' service to Beneficial. What greater restraint can there be on a retiree than the spector of withheld pension benefits?
The economic penalty thus far imposed upon petitioner by Beneficial has reached a sum in excess of $14,000. Certainly, Beneficial can draft its pension plan to protect its interests as allowed by the restraint of trade statute. But the plan may not contravene the public policy announced by the statute and carried over from the common law. It should be noted that the Beneficial Employment Contract, unlike the pension plan, contains limitations on competition restrictions in conformance with the statute; Section 13 of the contract states:
"13. That for a period of one year after the termination of my employment for any reason I will not engage in any way, directly or indirectly, in any business competitive with the Employer's business, nor solicit or in any other way or manner work for or assist any competitive business, in any city of the environs or trade territory thereof in which I shall have been located or employed within one year prior to such termination."
Yet none of these limitations appear in the pension plan. According to the 1967 Annual Report of the Beneficial Finance Company contained in the record, Beneficial is an international operation having more than 1,770 loan and finance offices. Under Section 2A(6) of the pension plan, the trustees of the fund have the authority to suspend a retiree's benefits if the retiree settles in any area having a Beneficial office, and works with any business connected with loaning money, no matter how remote in time or place from where the retiree spent his working years with the company. This is precisely the kind of control over former employees which the statute, and the common law, sought to prevent.
Another factor persuades us that the pension plan is subject to the restraint of trade statute. We have long held that when our Legislature adopts a statute from another state, we should adopt that state's judicial construction of the statute. See Blank v. Yoo Hoo of Florida Corp., 222 So.2d 420 (Fla. 1969); State ex rel. Porter v. Atkinson, 108 Fla. 325, 146 So. 581 *859 (1933); Duval v. Hunt, 34 Fla. 85, 15 So. 876 (1894).
Recently, in Akey v. Murphy, 238 So.2d 94 (Fla. 1970), we were asked to pass upon the validity of a non-competition provision in a contract involving a physician under the statute we discuss today. Mr. Justice Roberts, writing for the Court, employed the rule of adoption of judicial construction, and relied upon cases decided by the courts of California and Oklahoma for guidance. These states have restraint of trade statutes similar to Fla. Stat. § 542.12, F.S.A. Consistent with this approach, we have consulted the jurisprudence of these states again. While we can find no Oklahoma case treating pension plans, we do find that the California Supreme Court has construed the statute as we do today. In Muggill v. Reuben H. Donnelley Corp., 62 Cal.2d 239, 42 Cal. Rptr. 107, 398 P.2d 147, 18 A.L.R.3rd 1241 (1965), the Supreme Court was asked to consider whether a retirement plan containing a provision identical to Beneficial's Section 2A(6) brought the plan within the compass of the California restraint of trade statute. The plan, like Beneficial's plan, was a private, non-contributory corporate pension system. Mr. Chief Justice Traynor, writing for the court, held that the provision for the suspension of benefits by the employer constituted a restraint upon the retiree's ability to freely seek further employment, and therefore, the plan had to contain the restrictions imposed by the statute lest it be in contravention of the public policy. Other states have reached similar conclusions; see Cantor v. Berkshire Life Ins. Co., 171 Ohio St. 405, 171 N.E.2d 518 (1960); Murphy v. R.J. Reynolds Tobacco Company, 260 Iowa 422, 148 N.E.2d 400 (1967); contrary results have been reached, however; see Van Pelt v. Berefco, Inc., 60 Ill. App.2d 415, 208 N.E.2d 858 (1965). For general treatment of this question, see "Forfeiture of Pension Benefits for Violation of Covenants Not To Compete," 61 N.W.U.L.Rev. 290; also, an Annotation on the subject appears at 18 A.L.R.3rd 1246 (1968).
In the forepart of this opinion we said that our jurisdiction in this case resulted from a conflict between the District Court decision rendered below and Davis v. Ebsco Industries, Inc., 150 So.2d 460 (3rd D.C.A. Fla. 1963), in which it was said that the restraint of trade statute allowed restraints so long as they were reasonably limited in time and area. By affirming the Circuit Court's decision that the pension plan did not need restrictions on its non-competitive aspects to be valid, conflict was created by the District Court. By our opinion today, we resolve this conflict by holding that the pension plan is void to the extent that it does not contain reasonable restrictions on the restraints as are imposed by Fla. Stat. § 542.12, F.S.A.
However, we are not of the opinion that petitioner is entitled to the entire sum of benefits withheld by respondents. The statute voids a contract in restraint of trade to the extent that a restraint is created except in those instances provided for by the statute where the restraint is reasonably limited as to time and area. We interpret the statute to mean that in the instant case, restrictions on the receipt of pension benefits would be permissible, so long as the restrictions were reasonably limited as to time and area. Where no limitations are contained in the restrictions it is within the discretion of the trial court to determine what limitations as to time and area would be reasonable under the circumstances. Were this not so, the statute would simply state that offending contracts of this nature were void, rather than making them void only to the extent that they do not meet the requirement of reasonable limitation contained in subsection 2 of the statute.
In determining what restraints would be reasonable, the trial court may wish to consider the limitations contained in the employment contract provision set out previously. Petitioner is entitled only to those *860 benefits surviving a deduction of the amount accruing during the period of reasonable restraint as determined by the trial court. Our decision leaves undisturbed the trial court's finding of fact that sufficient evidence of competition existed, although we tend to think that the question is close.
The decision of the District Court is quashed with instructions that the case be remanded to the Circuit Court for further proceedings consistent with this opinion.
It is so ordered.
ROBERTS, C.J., and ERVIN, BOYD, McCAIN and DEKLE, JJ., concur.
DREW (Ret.), J., dissents.
NOTES
[1] Petitioner's benefits were suspended on December 1, 1965, and remained suspended until September 1, 1969, when payments were reinstated following petitioner's resignation from the National Bank; no back payments were allowed.
[2] In the three years petitioner was with the Bank prior to the declaratory judgment action, only approximately 100 out of 2,400 loans made by the Bank were in the range of loans made by Beneficial; moreover, only three of these loans were to persons who had previous dealings with Beneficial.