629 So.2d 922 (1993)
The JEWETT ORTHOPAEDIC CLINIC, P.A., Appellant,
v.
George M. WHITE, M.D., Appellee.
No. 93-220.
District Court of Appeal of Florida, Fifth District.
December 3, 1993.
Rehearing Denied January 19, 1994.
*923 Darryl M. Bloodworth of Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A., Orlando, for appellant.
Jerry R. Linscott and Todd M. Hoepker of Baker & Hostetler, Orlando, for appellee.
GRIFFIN, Judge.
Jewett Orthopaedic Clinic, P.A. ("Jewett") appeals a final declaratory judgment determining that a covenant not to compete executed by one of its physician shareholders is unenforceable. We reverse.
Jewett is a Florida professional association which specializes in orthopaedic surgery and which operates clinics in Orange and Seminole counties. Jewett services patients from a broad geographic area that includes Orange, Seminole, Osceola, Lake, Volusia and Brevard counties.
Appellee, Dr. George M. White ("Dr. White"), is an orthopaedic surgeon, specializing in hand surgery. He was first employed by Jewett on July 1, 1986. Effective July 1, 1987, he became a shareholder, officer and director of Jewett. His employment was subject to a series of employment agreements, the last of which was executed August 30, 1989.
The dispute in this case concerns an amendment to the Jewett shareholders' employment agreements executed by Dr. White and the other Jewett shareholders on July 25, 1990. The amendment provided:
24. Limitation of Practice: It is specifically agreed that in the event of the termination of this employment with the Corporation, the Employee shall not engage in the practice of medicine or surgery in the field of orthopaedics within Orange, Seminole, Osceola, Lake, Volusia or Brevard counties in the State of Florida for a period of two (2) years from the effective date of such termination. It is understood by the parties that no amount of money would adequately compensate the Corporation for damages which the parties acknowledge *924 would be suffered as a result of the violation of this provision by the Employee. In recognition of the substantial nature of such potential damages, it is agreed that the Corporation shall be entitled to specific performance of this provision, and to injunctive relief, and that the Employee will be responsible for the payment of court costs and reasonable attorney's fees incurred by the Corporation in enforcing the covenant set forth herein, if such a violation occurs. This paragraph shall survive the termination of this Agreement and the termination of the Employee's employment with the Corporation.
Dr. White submitted his resignation to Jewett on or about August 18, 1992.[1] Because his employment agreement provided for 180 days' notice, however, Dr. White was obligated to remain with Jewett until February 15, 1993, unless Jewett exercised its option to accelerate the date of his termination. Jewett did not exercise this option.
On July 21, 1992, prior to the date on which he submitted his resignation, Dr. White filed the instant action seeking a declaration that his covenant not to compete was unenforceable. The grounds asserted by Dr. White in his complaint were: (1) lack of consideration; (2) selective and arbitrary enforcement of the noncompete agreement; (3) lack of a legitimate protectible business interest underlying the covenant; (4) the territorial restrictions were overbroad and unreasonable; (5) the covenant prohibited only the practice of orthopaedic surgery, not hand surgery, and (6) enforcement of the agreement would be contrary to the public health, safety and welfare under section 542.33, Florida Statutes (1991).
Dr. White moved for summary judgment and submitted affidavits in support of his motion. Jewett responded to the motion by submitting affidavits, attempting to put at issue all of the factual allegations made by Dr. White both in his complaint and in his supporting affidavits.
The court held a hearing on the motion and subsequently issued a declaratory decree in favor of Dr. White. In its decree, the court did not directly address any of the grounds for summary judgment raised by Dr. White.[2] Instead, the judgment provided:
The issue in this case is whether the noncompete provisions in paragraph $24 of the July 25, 1990, first amendment to petitioner's employment agreement is enforceable. A decision on that is controlled by whether Dr. White going into practice of orthopaedic medicine in the Orlando area in direct competition with Jewett Clinic's orthopaedic practice would be fair or unfair competition. The answer is that there is not one shred of evidence nor one plausible argument Dr. White's practice of medicine would be any different than the practice of orthopedics by any other doctor in this community. [emphasis in original].
Contrary to the lower court's ruling, the question whether the noncompete agreement is unenforceable does not turn on whether Dr. White's opening a competing practice would be "unfair." The question is controlled by the provisions of the current version of section 542.33, Florida Statutes, (1991),[3] which provides in relevant part:
542.33 Contracts in restraint of trade valid. 
(1) Notwithstanding other provisions of this chapter to the contrary, each contract by which any person is restrained from *925 exercising a lawful profession, trade, or business of any kind, as provided by subsections (2) and (3) hereof, is to that extent valid, and all other contracts in restraint of trade are void.
(2)(a) One who sells the goodwill of a business, or any shareholder of a corporation selling or otherwise disposing of all of his shares in said corporation, may agree with the buyer, and one who is employed as an agent, independent contractor, or employee may agree with his employer, to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employers within a reasonably limited time and area, so long as the buyer or any person deriving title to the goodwill from him, and so long as such employer, continues to carry on a like business therein. Said agreements may, in the discretion of a court of competent jurisdiction, be enforced by injunction. However, the court shall not issue an injunction contrary to the public health, safety or welfare or in any case where the injunction enforces an unreasonable covenant not to compete or where there is no showing of irreparable injury. However, use of specific trade secrets, customer lists, or direct solicitation of existing customers shall be presumed to be an irreparable injury and may be specifically enjoined. In the event the seller of the goodwill of a business, or a shareholder selling or otherwise disposing of all his shares in a corporation breaches an agreement to refrain from carrying on or engaging in a similar business, irreparable injury shall be presumed. [emphasis added].
This statute expresses the legislature's intent that covenants not to compete, although validated by the statute, are not enforceable by injunction if the covenant is unreasonable, if enforcement would be contrary to the public health, safety or welfare, or if the proponent is unable to show irreparable harm if the covenant were not enforced according to its terms.[4]
Appellee urges that the lower court should be affirmed because he was right for the wrong reason  that because a physician's covenant not to compete interferes with the rights of patients to treatment by the doctor of their choice within the prohibited geographical area, such covenants are facially "contrary to the public health, safety and welfare" and are, thus, unenforceable. It is clear that before this language was added by the 1990 amendments, covenants not to compete had long been held enforceable against physicians, both in Florida and in other jurisdictions. E.g., Akey v. Murphy, 238 So.2d 94 (Fla. 1970); Chessick Clinic, P.A. v. Jones, 367 So.2d 1028 (Fla. 2d DCA 1979). See also 28 Am.Jur. Injunctions § 127 at 626 (1959).
We cannot agree with Dr. White that by adding the above-quoted language the legislature intended to make covenants not to compete unenforceable against physicians. Rather, given the language used in the amendment, it appears that the legislature intended to codify prior case law of this state which recognized that courts are not bound to enforce a covenant against a physician (or anyone else) when enforcement would be inimical to the public health, safety or welfare, or when the covenant is otherwise unreasonable. Chandra v. Gadodia, 610 So.2d 15 (Fla. 5th DCA 1992), rev. denied, 621 So.2d 432 (Fla. 1993); Staff of Fla.S.Comm. on Judiciary-Civ., CS for SB 2642 (1990) Staff Analysis 2 (May 17, 1990); Staff of Fla. H.Comm. on Commerce, CS for HB 2801 (1990) Staff Analysis 2 (Aug. 28, 1990). For example, in Lloyd Damsey, M.D., P.A. v. Mankowitz, 339 So.2d 282 (Fla. 3d DCA 1976), cert. denied, 345 So.2d 421 (Fla. 1977),[5] the court found a compelling need for the physician's services as a surgeon in an area in the Florida Keys, where he was practicing medicine, and noted that enforcement of the covenant would jeopardize the public health. *926 The record in this case shows the question whether the public health will be adversely affected by enforcement of Dr. White's covenant is, at most, a disputed issue of fact.
Dr. White also urges that the lower court's opinion was merely a "shorthand" way of expressing that, as a matter of law, Jewett has no "legitimate business interest" to protect through enforcement of the covenant. The Second District Court of Appeal found this requirement to be implied in section 542.33. Hapney v. Central Garage, Inc., 579 So.2d 127 (Fla. 2d DCA), rev. denied, 591 So.2d 180 (Fla. 1991). As did the Hapney court, Dr. White focuses on certain "business interests" that are deemed legitimately entitled to protection. Id. at 134. Generally, these are the same factors the legislature selected in creating a presumption of irreparable harm in section 542.33(2)(a). Dr. White argues that Jewett had no protectible interest in this case because he had no "trade secrets" and did not intend to solicit his former patients from Jewett. Even the Hapney court recognized, however, that there is a hierarchy of interests that can be protected by injunction. Some are entitled to a presumption while others require proof. Id.
As this court previously observed in Chandra, when the legislature made substantial changes to section 542.33 in 1990, it chose not to treat enforceability of noncompete agreements in terms of "legitimate business interests." 610 So.2d at 19. Rather, under the 1990 amendment, the legislature elected to require some showing of actual injury, consistent with well-developed equitable principles. Also, under the 1990 amendment, unreasonableness in a general sense, not only time and area reasonableness, has become a defense to enforcement of a covenant not to compete. Chandra, 610 So.2d at 19.
As the 1990 amendment to section 542.33 has now fully codified, a covenant's reasonableness must be assessed in determining whether it is enforceable. The court must employ a balancing test to weigh the employer's interest in preventing competition against the oppressive effect of the covenant on the employee. Miller Mechanical, Inc. v. Ruth, 300 So.2d 11 (Fla. 1974); 28 Am.Jur. Injunctions §§ 112-113 at 613-614 (1959). Although employees, professional and non-professional, and the public-at-large, have a vital interest in the free availability of their industry, skill and talents offered through competition in the marketplace, the equally well-recognized and important principle of freedom of contract and the right of enforcement of freely bargained for contractual duties deserves recognition. Certain of the factors emphasized by Dr. White, such as an absence of "trade secrets," may be relevant to the "reasonableness" of the covenant or to whether the employer can show an injury, but they are not exclusive. There is no basis at this stage of the proceedings to determine the Jewett covenant is unreasonable as a matter of law.
The final issue[6] is the question of "irreparable injury." Issuance of an injunction has historically required a showing of irreparable injury. Stoner v. So. Peninsula Zoning Comm'n, 75 So.2d 831, 832 (Fla. 1954). Dr. White again contends that, as a matter of law, Jewett cannot make a showing of irreparable injury as required under the 1990 amendment because Jewett has no "legitimate business interest" to injure. As both parties acknowledge, the legislative history behind the 1990 amendment shows that one of its key purposes was to undo the rule established by the Supreme Court of Florida in Capraro v. Lanier Business Products, Inc., 445 So.2d 719 (Fla. 4th DCA 1984), aff'd, 466 So.2d 212 (Fla. 1985). The Capraro court held that the irreparable harm needed for issuance of a temporary injunction would be presumed from the fact of breach of a valid covenant not to compete because the delay inherent in the need to prove harm would eviscerate the injunctive remedy. The court explained that requiring an employer to wait until after something harmful had occurred, in order to prove that he had been damaged by the breach, would deprive the employer of his most effective remedy. 466 So.2d at 213. To avoid the "relief delayed is *927 relief denied" problem, the court validated the use of the presumption. Id. The 1990 amendment takes away from the employer the evidentiary presumption of "injury" authorized by the Capraro court. Now an employer must offer some evidence of injury as a predicate to an injunction. Staff of Fla. H.Comm. on Commerce, CS for HB 2801 (1990) Staff Analysis 3 (Aug. 28, 1990).
There is nothing in the amended statute itself, or in the legislative history, to suggest that the legislature intended to confine "injury" to the specific "legitimate business interests" catalogued in Hapney. "Injury" would appear to be broad enough to include injury caused by competition in violation of a reasonable noncompete covenant, not merely injury caused by interference with certain specified "legitimate" rights. In any event, the supreme court observed in Akey that an agreement not to compete made a condition precedent to admission to a medical partnership was a "reasonable interest to be protected... ." 238 So.2d at 97. The court then observed that a transfer of goodwill is implied in connection with the withdrawal of an employee from a medical clinic. Id.
The requirement that the injury be "irreparable" should not present a difficult problem. The question of whether the injury is "irreparable" turns on whether there is an adequate legal remedy available. 4 Pomeroy, Equity Jurisprudence § 1343, (5th ed. Symons, 1941). Irreparable injury means, in essence, that injunction is the only practical mode of enforcement. A negative covenant, where one party promises that he will not do certain things, is an apt example. Id. at 941-42. The supreme court observed in Miller Mechanical that certain types of contractual covenants, like covenants not to compete, by their nature lend themselves principally to enforcement by injunction because of the difficulty of arriving at a dollar figure for the actual damage done as the result of the breach. 300 So.2d at 12. The 1990 amendment creates no new proof problems on the issue of irreparableness.
Under the 1990 amendment, in order to obtain an injunction, an employer like Jewett will have to offer evidence of actual harm not readily accurately calculated or compensated by money damages; also, the employer will have to establish both that the covenant they seek to enforce does not threaten public health, safety or welfare and that it is, under all the relevant circumstances, a reasonable covenant. Given the state of this record, Dr. White has not conclusively established that this cannot be done by Jewett.[7]
REVERSED and REMANDED.
GOSHORN and DIAMANTIS, JJ., concur.
NOTES
[1] According to the complaint, disputes arose between Dr. White and Jewett in early July, 1992. Dr. White asserts he resigned his employment in August only after Jewett took a number of steps which were incompatible with his continuing practice at Jewett.
[2] The trial judge in this case wrote an article in the local Bar newsletter shortly after his opinion was issued in which he argued in support of his ruling. That article has not been considered by this court.
[3] For a general discussion of the law of Florida prior to passage of legislation permitting noncompete agreements in 1953, and the case law validating and applying the predecessor to Florida's current statute, see Kendall B. Coffey, Noncompete Agreements by the Former Employee: A Florida Law Survey and Analysis, 8 Fla.St. U.L.Rev. 727 (1980). For a discussion of the 1990 amendment, see Kendall B. Coffey & Thomas F. Nealon, III, Noncompete Agreements Under Florida Law: A Retrospective and A Requiem?, 19 Fla.St.U.L.Rev. 1105 (1992).
[4] In this case, both parties appear to have approached the question of "unenforceability" to be the equivalent of enforceability by injunction. Although enforceability vel non of a covenant and entitlement to equitable relief for enforcement of a covenant may have become two separate issues given the way in which the 1990 amendment was drafted, we will treat only the question of enforceability by injunction.
[5] See also Hefelfinger v. David, 305 So.2d 823 (Fla. 1st DCA 1975).
[6] We see no merit at all in Jewett's argument that Dr. White's sale of his stock pursuant to the stock redemption agreement brings him within the final provision of section 542.33.
[7] We also observe that since the legislature has reimposed on the employer the burden of proving injury, it would be anomalous if the employee could defeat his contractual undertaking by filing a declaratory judgment and obtaining a favorable ruling on the issue of irreparable harm before the competition has actually begun.